Schneider et al. *v.* Scranton, Appellant.

Argued April 19, 1938.   Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Alexander S. Gorny,* Assistant City Solicitor, and *Jerome I. Myers,* City Solicitor, for appellant.

*Reese H. Harris,* of *O'Malley, Hill, Harris & Harris,* for appellees.

OPINION BY MR. JUSTICE LINN, May 26, 1938:

Shortly stated, the question is whether amendments made to the second class city law since 1927 apply to cities of the second class A not mentioned in the amending acts. The appeal by the City of Scranton is from an order under the Uniform Declaratory Judgments Act declaring "that the City of Scranton is governed by the provisions of" the Act of March 31, 1937, P. L. 168, 53 PS section 2551 et seq.[1] This Act amends the second

---

[1] The title to the Act is as follows: "An Act To amend the act, approved the seventh day of June, one thousand nine hundred and one (Pamphlet Laws, four hundred ninety-three), entitled 'An act providing for the examination, licensure, and registration of persons, firms, or corporations engaged or engaging in the business or work of plumbing or house drainage, and prescribing certain rules, regulations, and requirements for the construction of plumbing, house drainage, and cesspools in cities of the second class; and imposing fines, penalties, and forfeitures for violation thereof,' as amended, extending the provisions of said act to certain boroughs, incorporated towns, and townships of the first class; extending the same to include building drainage; imposing certain powers and duties on the Department of Health; making further provisions for the administration of said act; extending the specifications, increasing certain fees and payments; and providing increased penalties, including imprisonment; and repealing sections fifty-four, fifty-five, fifty-seven, and fifty-eight of said act."

class city law of June 7, 1901, P. L. 493, 53 PS section 2551 et seq., as theretofore amended, providing for the regulation of plumbing and related matters. Cities, at that time, were of three classes. They were reclassified into four[2] classes by an Act approved March 9, 1927, P. L. 18, 53 PS section 1 et seq. To provide for the government of the new class of cities, this statute said: "Until otherwise provided by law, cities of the second class A shall continue to be governed, and shall have all the powers, privileges and prerogatives now provided by the laws of the Commonwealth relating to cities of the second class." That is, until the second class city law should be changed, it applied to second class A cities.

Scranton, which had been a city of the second class prior to this reclassification, then became a city of the new class—of second class A. Part of the second class city law, in effect at the time, and therefore applicable to Scranton, was the Act[3] of 1901, P. L. 493, 53 PS section 2551 et seq., providing for plumbing regulation. On behalf of the city it is contended that the Act of 1937 does not apply and that the city remains subject to the second class city law as it was in 1927; this contention is based on the fact that the Act of 1937 does not in terms apply to cities of the second class A.

---

[2] The first class remained as before. "Those containing a population of five hundred thousand and under one million shall constitute the second class. Those containing a population of one hundred and thirty-five thousand and under five hundred thousand shall constitute the second class A. Those containing a population under one hundred and thirty-five thousand shall constitute the third class."

[3] Before the reclassification of cities, this Act of 1901 had been amended several times: first, by the Act of May 14, 1909, P. L. 840, inter alia, extending its provisions to cities of the third class; again, in respects not now material, by the Acts of May 21, 1913, P. L. 276, and June 12, 1913, P. L. 476.

510

The new Act in terms applies to cities of the second class, and to certain boroughs, incorporated towns and townships of the first class. Mere extension of its provisions to certain classes of municipalities does not of itself make it applicable to another class of cities not mentioned in the Act. The learned court below was of opinion that the legislature intended that it should apply also to cities of the second class A though not mentioned. It is clear that the words of the Act do not support the judgment. That being so, we next inquire whether there is any rule of construction that would justify the court in disregarding the plain words used by the legislature and reading into the Act the words "cities of the second class A" which the legislature omitted. It was thought below that this result should be reached pursuant to the Statutory Construction Act approved May 28, 1937, P. L. 1019, 46 PS section 501 et seq., and in support of the conclusion, two provisions are specified. Section 52 entitled "Presumptions in Ascertaining Legislative Intent", provides: (1) "That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable." We think that clause has no application. There is no difficulty about any of the words used; their meaning is plain and free from ambiguity and the intention expressed is sensible. If the learned court meant that it would be "absurd" or "unreasonable" not to have the same plumbing regulations in cities of the second class A as existed in the other municipalities specified, it must be said that was a matter for the legislature. There is of course the possibility suggested at the argument, that the draftsman of the bill overlooked[4] the 1927 reclassification of cities, and that, if he had thought of it, he would have included cities of the second class A. But, as the words are

---

[4] Compare Act of April 11, 1929, P. L. 493, with Act of May 13, 1927, P. L. 1011, 53 PS section 9161 et seq.

plain, and, given their ordinary meaning, result in no "absurd" or "unreasonable" sense, we think section 52(1) inapplicable. The court also founded its judgment on section 73: "Whenever a section or part of a law is amended, the amendment shall be construed as merging into the original law, become a part thereof, and replace the part amended and the remainder of the original law and the amendment shall be read together and viewed as one law passed at one time; but the portions of the law which were not altered by the amendment shall be construed as effective from the time of their original enactment, and the new provisions shall be construed as effective only from the date when the amendment became effective."[5] That section, instead of supporting the judgment, is against it; "the new provisions", that is, the amendments, both as to change in regulatory matters and as to the municipalities to which they are made applicable, "shall be construed as effective only from the date when the amendment became effective" (September 1, 1937); in other words, while the amendments are merged into the original law as to the municipalities to which the original law, as amended, applies, section 73 does not allow the court to enlarge the expressly named classes of municipalities by including a class which the legislature omitted.

It is the duty of the legislature, within constitutional limitations, to provide for local government throughout the state and this is done by general laws. Such a general law constitutes a reservoir of power on which local municipalities may, and frequently must, draw. The legislature may increase or diminish that power. At the time of the reclassification, cities of the second class and those of second class A, were subject to the same general power, which, for convenience, may be called the second class city law. In 1937, by the law now in ques-

---

[5] See *Spain's Estate*, 327 Pa. 226, 193 A. 262.

tion, a change in terms was made in the power of one class but no change[6] was made in the law to which the other class remained subject. If the judgment appealed from were sustained, the court would hold, in effect, that changes made in the law governing cities of the second class necessarily also applied to cities of the second class A; such a rule cannot be adopted because it would negative the reclassification of cities in 1927. The purpose of classifying them was to facilitate legislating as the necessities of the respective classes might require; these reasons will be found stated in *Ruan Street,* 132 Pa. 257, 273 et seq., 19 A. 219. If the classification is to be disregarded on the theory that the court may say that the legislature overlooked the effect of its classification in this or any other case, a curious and unintended result would follow as a glance at other changes made in second class city legislation since 1927 will show.[7]

The order appealed from is reversed and the petition is dismissed at the cost of appellees.

---

[6] Except as to the repeal of sections 54, 55, 57 and 58, which appear to be supplied by a statute expressly referring to cities of the second class A: Act of April 14, 1937, P. L. 313, 53 PS section 2224.

[7] For example, see the Act of 1913, P. L. 361, 53 PS section 8427, and amendment of 1931, P. L. 13; the Act of 1901, P. L. 20, 53 PS section 2551 et seq., Article IV and amendment of 1937, P. L. 2630; the Act of 1915, P. L. 596, 53 PS section 9411 et seq., and amendment of 1931, P. L. 550; the Act of 1901, P. L. 20, 53 PS section 2551 et seq. as amended 1929, P. L. 1188.

By the Act of April 11, 1929, P. L. 493, a repealing clause contained in a supplement to the second class city Act of May 13, 1927, P. L. 1011, 53 PS section 9161 et seq., was amended to read "except in so far as they [repealed provisions] apply to cities of the second class A."