## Mamallis, Appellant, *v.* Millbourne Borough.

Argued April 19, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Howard Richard,* with him *Berman, Richard & Brian,* for appellant.

*Stephen J. McEwen, Jr.,* with him *McEwen and McEwen,* for appellees.

OPINION BY MR. JUSTICE EAGEN, October 10, 1960:

This involves two interrelated mandamus actions tried in the court below without a jury. From judgments in favor of the defendants, these appeals are prosecuted.

At some time (the exact date not appearing of record) in December 1955, Nicholas Mamallis, plaintiff-appellant in each of these consolidated appeals, was appointed "acting captain" of the police force of the Borough of Millbourne. He continued in that capacity until the spring of 1957, at which time he was officially sworn in as "captain." As captain, he received an annual salary of $5200. Patrolmen on the same force were paid $4500 yearly.

On November 5, 1958, Captain Mamallis entered a hospital for treatment. After a brief convalescence, he returned to work on November 28, 1958. He testified, on the trial of this action below, that on the day before he entered the hospital and just a half-hour be-

fore he officially went on duty, he was met by Burgess Simone who demanded that Mamallis surrender cabinet keys, control of which had been his by virtue of his office as captain, and who also told Mamallis that thenceforward he was to be captain in name and pay only. In effect, Mamallis was, allegedly, on that day informed that he would no longer perform the duties of his office.

Subsequent to his return to duty on November 28, 1958, Mamallis was placed by the burgess on the twelve-midnight to eight a.m. shift and was kept thereon permanently and this shift did not thereafter become subject to rotation, as it had under the system previously followed. This situation persisted, unchanged, until February 16, 1959, on which date the borough council passed an ordinance which abolished the offices of captain and sergeant of police. Appellant has not been discharged from the force but has been on a self-created "leave of absence" since the passage by the borough council of the aforementioned ordinance. He does not herein complain of his having been placed on the night shift but apparently presents that fact solely for the purpose of its tendency to show that the later abolition of the captaincy by council was another milestone along the road of personal reprisal. His qualifications, integrity and ability to serve on the force were never questioned, the borough alleging that the office was abolished, not as a reprisal but, solely for reasons of harmony and economy.

In these actions, he sought a hearing before the civil service commission of the Borough of Millbourne pursuant to the Act of May 4, 1927, P. L. 519, Art. XI, §1185, as amended, 53 PS §46185, and further demands reinstatement to the eliminated office with back pay to the date of its abolition. The basis of his actions is that the office of captain when once duly created,

while subject to elimination by council for cause, was in this case abolished "unlawfully, arbitrarily and in bad faith and contrary to the provisions of the Act of May 4, 1927, P. L. 519, as amended."

In *Manning v. Millbourne Borough Civil Service Commission,* 387 Pa. 176, 178, 127 A. 2d 599 (1956), this Court said: "It is well settled that the borough council had the right, acting in good faith, to discontinue the office of chief of police: Carey v. Altoona et al., 339 Pa. 541, 16 A. 2d 1; Simasek et al. v. McAdoo Borough et al., 352 Pa. 306, 42 A. 2d 600; McGuckin v. West Homestead Borough, 360 Pa. 311, 62 A. 2d 23; Scaccia v. Old Forge Borough, 373 Pa. 161, 94 A. 2d 563." This power would also exist as to offices of lesser rank.

Thus framed, the issue here is whether or not the office of captain of police was abolished in good faith. In this connection, it is necessary to note that this Court has often held that there is a legal presumption that "(m)unicipal officers are presumed to have properly performed their duties and to have taken the steps necessary to give validity to their official acts: (citing cases)." *Miners S. Bank v. Duryea Borough,* 331 Pa. 458, 463, 200 Atl. 846 (1938). " 'The presumption is rebuttable by affirmative evidence of irregularity . . . . (T)here can be no presumption of official irregularity, and unless the presumption of regularity is rebutted, it is conclusive.' " *Falkinburg v. Venango Township,* 297 Pa. 358, 362, 363, 147 Atl. 62 (1929). In fairness to appellee, we unhesitatingly state here that on the basis of the record before us there is no need to rely on this presumption of validity. Appellant produced no affirmative proof of bad faith on the part of the borough council. The very most his evidence amounted to was a mere suggestion of possible bad faith. For instance, appellant seized upon the fact that, while

the offices of captain and sergeant of police were abolished allegedly for economic reasons, the salaries of no other borough employees were reduced. Similarly, he shows that, as matters actually happened, the borough received approximately $9000 more in revenue than its budget had anticipated for the year 1958. Lastly, he relies on his own personal testimony to the effect that the burgess and he were at odds, as it were, personally and officially, and that the abolition of the office was, therefore, accomplished as a reprisal. Any possible inference of bad faith that could conceivably be drawn from the above testimony was, we think, rather effectively rebutted by defendants' witnesses.

Mrs. Lillian H. Mustard, president of the borough council, by way of showing a need for economic adjustment, testified that the item "sewer repairs" in the amount of $4000 was an expense "in the budget that we had never had before." She also pointed to an inclusion in the budget of a "$2000 pension fund for the policemen, which we had never had before. . . ." She further stated that other items of expense were higher; that by abolishing the offices of both captain and sergeant in the police department a net annual saving of $900 was realized; that this was a substantial item in a small borough's budget; that the appellant was a good policeman, but that, in her judgment, the borough's four-man police force did not require either a captain or a sergeant.

Metz H. Kines, the borough councilman who introduced the ordinance, testified in part as follows: "We had a problem that we never had before and we were trying in every way we could to economize in order to eliminate it and at that time it is a fact, if we eliminated those two positions we could save that amount of money and plus the fact that it was the recommendation of the chairman and member of the finance.

committee, and I made the motion for reasons of economy."

The burgess explained the reasons for his action in assigning the appellant to the night shift and that it was done without objection on appellant's part. He stated emphatically that he did not request the council to enact the ordinance abolishing the rank of captain in the police force; that the appellant took a leave of absence from the police force on February 17, 1959, without consulting him or even notifying him of such intention.

It is not for this Court, by studying isolated, cold words of a printed record, to believe certain witnesses and to disbelieve others. The matter of credibility is for the trial court. The discretion possessed by that court in this matter is particularly broad because his is the best opportunity to observe the demeanor of the witness called before him. In this case the court below, sitting without a jury, found that bad faith on the part of council was not made out by appellant. With this conclusion we agree. The suspicion and innuendo relied upon by appellant for a showing of bad faith was, in any event, certainly sufficiently met head-on and effectively destroyed by the testimony of appellees. The court below could certainly see fit, as it did, to believe these witnesses.

In conclusion, it is necessary for us but briefly to discuss the other point raised by appellant. He argues that, by his allegedly having been shorn of his duties as captain from November 4, 1958, to February 16, 1959, he was "reduced in rank" within the meaning of the Act of May 4, 1927, P. L. 519, Art. XI, §1185, as amended, 53 PS §46185, which provides as follows: "If the person suspended, removed or reduced in rank shall demand a hearing by the commission, the demand shall be made to the commission. Such person may

make written answers to any charges filed against him not later than the day fixed for hearing. The commission shall grant him a hearing which shall be held within a period of ten days from the filing of the charges in writing. . . ." We find it unnecessary to discuss whether or not Nicholas Mamallis, when allegedly shorn of his duties on November 4th (though continuing to possess the name, badge and pay of captain until the office was legally abolished on February 16, 1959), was "suspended, removed or reduced in rank" so as to entitle him to a hearing before the civil service commission. Our holding that the office no longer legally exists renders this issue moot. He is not legally entitled to the office. He cannot compel his reinstatement. Consequently, a hearing before the civil service commission could avail him nothing.

Judgment affirmed in Appeal No. 205.

Appeal No. 206 is dismissed.