City of Pittsburgh *v.* Kronzek.

Argued June 1, 1971, before President Judge Bow-
MAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MANDERINO, MENCER and ROGERS.

*Allen N. Brunwasser,* for appellants.

*Frederick A. Boehm,* First Assistant City Solicitor, with him *Ralph Lynch, Jr.,* City Solicitor, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, August 2, 1971:

Appellants, Srul and Eva Kronzek,[1] are owners of numerous deteriorating and dilapidated rental buildings in the City of Pittsburgh which are the subject of this litigation. Between October 24, 1967 and November 27, 1968, the Director of the Pittsburgh Department of Public Safety, on the basis of visual inspections of the premises by departmental inspectors, issued six[2] notices of condemnation as to structures owned by the Kronzeks. The inspectors, on the basis of their observations, had determined the subject buildings to be dan-

---

[1] Eva Kronzek, wife of Srul Kronzek, died during the pendency of this litigation and title to all the real estate involved herein passed to her husband as survivor in tenancies by the entireties.

[2] Initially six properties were involved in this consolidated litigation but one appeal was withdrawn for reasons not disclosed in the record.

gerous and a safety hazard to the public health and welfare. The notices were issued pursuant to City Ordinance No. 76, approved March 3, 1966, which provides in relevant part:

"Sec. 210-A. All unsafe buildings as herein defined are declared to be public nuisances and shall be repaired, vacated or demolished, pursuant to the notice and order of the Superintendent under Sec. 210 or Sec. 211 of this Ordinance, in accordance with the following standards, or as otherwise provided in this Ordinance:

. . . .

"(d) If the unsafe building, whether or not vacant, has not been repaired in accordance with the Notice and Order of the Superintendent, and if it is in such condition as to make it dangerous to the health, safety, morals or general welfare of its occupants or of the public, and the vacation of the building would not eliminate such condition, it shall be ordered to be demolished."

The vacancy of all the buildings is undisputed as is the fact that they are uninhabitable in their present decayed condition. However, the conclusion that they are in such disrepair as to require demolition under a constitutional exercise of the municipal police power is in serious dispute.

The property owners dispute only the reasonableness of the exercise of the police power under the above ordinance and do not argue that they were denied the basic requisites of notice and hearing constituting due process of law. Each notice of condemnation contained the following clause after cataloguing the nature of the conditions rendering the structure unsafe and dangerous to the public.[3] "Any owner, agent, or occupant

---

[3] For example, as to a 2½-3½ story brick dwelling at 99 Roberts Street, the notice of condemnation recited the following conditions: "Foundation out of plumb, stone disintegrated in founda-

interested, who may feel himself aggrieved by an order of the said department, which requires a substantial alteration or repair, or the removal of any substantial portion or portions, of any building, may, within thirty days after the service of the order as hereinafter provided, present his petition to the court of common pleas of the county wherein the city is situated, having first notified the said department of his intention so to do; and the court shall then fix a time for a hearing, within five days thereafter, and may suspend such order pending hearing; and thereafter, at the time fixed for the hearing, a judge of said court shall hear and determine the said appeal, and make such order as right and justice may require." [citing an excerpt from the Act of May 13, 1915, P. L. 297, section 3, 53 P.S. §25094.]

Appellant cannot and does not argue that such timely notice and opportunity for a full judicial hearing deny him his constitutional rights to due process. Kronzek in fact took timely appeals from each notice and eventually the six cases were consolidated for hearing and argument before the Court of Common Pleas of Allegheny County in December 1969 and June 1970. After considerable expert testimony offered by both the City and Kronzek as to the actual condition of each of the structures, the lower court ruled by opinion and order dated August 7, 1970 that the City had acted properly within its constitutionally delegated police powers in issuing the demolition notices.

An appeal was taken to the Supreme Court and subsequently transferred to the Commonwealth Court

---

tion; roof and rafters sagging. Front wall out of plumb; rear wall bulged, brick deteriorated. Lintels and doors broken; gutters rotted; window frames and sash rotted; downspouts rusted out. Building in a generally dilapidated condition; unfit and unsafe for occupancy, constituting a serious hazard in the immediate area and a danger to the general welfare of the public."

pursuant to the Appellate Court Jurisdiction Act of July 31, 1970, P. L.      (Act No. 223), as amended, 17 P.S. §211.101 et seq.

On appeal, the property owners advance three arguments, all of which were discussed and decided by the lower court in its opinion. First and most important, Kronzek argues that the demolition orders of the City are an unreasonable and therefore unconstitutional exercise of the police power so as to require the Court to declare Ordinance No. 76 invalid. Second, appellant argues that even if the questioned ordinance is valid that there is insufficient evidence to declare the dilapidated structures "unsafe and dangerous". Third, appellant contends that the constitutional prohibition against unreasonable searches requires at least a search warrant before entrance into these admittedly open and vacant buildings.

We agree with the lower court in its dismissal of each of these arguments and affirm its decision as to the reasonableness and propriety of the City's acts and activities with respect to these long unoccupied and deteriorated structures. We shall, however, discuss each of appellant's points briefly giving our reasons for affirming the City's demolition directives in this case.

## I

The City of Pittsburgh draws its power to issue notices of demolition from the Act of May 13, 1915, *supra*.

"To provide for inspection of buildings and premises

"In addition to the powers heretofore granted to cities of the second class, as provided for in an act, entitled 'An Act for the government of cities of the second class,' approved the seventh day of March, one thousand nine hundred and one, and the supplements thereto, every city of the second class, in its corporate capacity, in order to decrease and prevent fire, the

spread of fire, and fire waste, loss of life from fire, and loss of life or damage to property from unsafe or improper construction or design of buildings, is authorized and empowered, by ordinance,—

"To provide for the inspection of the inside and outside of all buildings and premises at any time. 1915, May 13, P. L. 297, §1(a)." 53 P.S. §25081.

This enabling legislation gives to the City the authority to enact ordinances deemed necessary to guard and protect the public health, safety, morals and general welfare. It was pursuant to this enabling authority that Ordinance No. 76 was enacted to provide for the repair, or demolition in appropriate cases, of buildings that are found to be public nuisances in fact.

Of course the power of the City to declare structures which are not in fact dangerous to the public to be such nuisances would be an abuse of the delegated authority. This Court has recently ruled that a second class township having similar regulatory authority under its delegated police powers cannot enact ordinances which unreasonably or arbitrarily categorize certain activities or conditions as nuisances per se without adequate factual support and provisions for procedural due process in such ordinance. In striking down an ordinance requiring confiscation of "abandoned cars", this Court adopted the well-reasoned opinion of the lower court which said in part: " 'The intent of the legislature in passing the above Act seems clear. Second-class townships were thereby given the right to prohibit nuisances, which in a given case might include the storage of abandoned or junked automobiles. The legislature, however, did not declare or define such storage as a nuisance per se. Nor did it give the townships the power so to do. Nowhere in the Code is there language expressing any such intention. Rather, the statutory language employed can reasonably be construed only as authorizing the local governing bodies

to declare such activities to be nuisances when, based upon actual conditions in the township, they constitute nuisances in fact. . . .'" *Borough of Macungie v. Hoch,* 1 Pa. Commonwealth Ct. 574,[4] 276 A. 2d 853, 855 (1971).

The City of Pittsburgh has not declared any specific condition as a nuisance per se but provides a procedure of inspection, notice and appeal whereby the property owner may be assured a due process determination of the validity of the application of the ordinance to his property; the property must be found to constitute a public danger in fact. Once there has been a proper determination that the building is a nuisance in fact, the City is well within its authority in subjecting such building to appropriate regulation and destruction. "[T]he validity of ordinances providing for the destruction of unsafe buildings, where the owner has had notice and opportunity to remedy or remove them himself and has failed to do so, generally is recognized. But the rule in most jurisdictions is that unless it is apparent that delay will imperil life and limb, an offending building must be condemned, notice and hearing given the owner or agent, and an adjudication rendered that the structure is a nuisance." 7 McQuillin, *Municipal Corporations,* §24.561 (1968 Revised Edition).

The demolition ordinance is a proper and necessary exercise of the police power as long as there is factual evidence to support its application to a specific structure.

## II

The substance of the evidence supporting the six demolition orders was the visual observations and measurements of the City's building inspector as pre-

---

[4] The lower court's opinion is not reproduced in the official state reporter but may be found at 34 Lehigh Law Journal 99 (1970).

sented by his testimony in the lower court. It is not for this Court to review the credibility of the witness or weight given to the evidence by the lower court where the witness's testimony and other evidence in the record supports the lower court's factual conclusions. "The trial judge's finding . . . which in this case carries the same weight as the verdict of a jury [citing cases] should not be overturned where it is supported by evidence in the record." *Girard Trust Corn Exchange Bank v. Brink's, Inc.*, 422 Pa. 48, 53, 220 A. 2d 827, 830 (1966).

The lower court carefully reviewed the evidence of the deteriorated condition of the buildings and in its opinion catalogues its findings supported by the testimony of the City's inspector. It discounted the allegations made by appellant that the inspector was not qualified to draw the conclusions he did as to the dangerous condition of the subject buildings. Although the witness had no formal education as a building inspector, the lower court found him qualified to make the relevant determinations. The Supreme Court has applied a practical test for lower courts in assessing the qualifications of so-called "expert" witnesses. "As we said in Moodie v. Westinghouse Elec. Corp., 367 Pa. 493, 501, 80 A. 2d 734 (1951): 'If a witness "has any reasonable pretension to specialized knowledge on the subject under investigation he may testify, and the weight to be given to his evidence is for the jury: [citing cases] 'The test applied must not set the standard of qualification so high as to exclude the only available kind of testimony ordinarily obtainable in such cases': [citing a case] Whether the knowledge of the witness justifies the admission of his testimony is a matter for preliminary inquiry by the trial court, being largely a question within its discretion. . . .": McCullough v. Holland Furnace Co., 293 Pa. 45, 49.' " *Griffith*

v. *Clearfield Truck Rentals, Inc.*, 427 Pa. 30, 41, 233 A. 2d 896, 902 (1967).

The witness presented ample testimony, apparently including photographs, of his personal familiarity with the appellant's properties and of his knowledge of proper building safety standards. The appellant placed heavy reliance on the fact that none of the condemned buildings had collapsed or created actual injury to the public. The lower court correctly concluded that merely the reasonable potential for serious harm to the public is sufficient to support a finding of nuisance per se and the resulting demolition order.

### III

Finally, the appellant had no constitutional right to prohibit entry to his tenantless structures, which were in fact open to the elements as well as roving vandals, both of which significantly contributed to the further deterioration of the buildings. The cases cited in appellant's brief to support his position involve unlawful attempts to enter occupied structures to discover alleged criminal activities therein. Such cases are clearly not on point as no occupants were here disturbed nor were criminal penalties ever contemplated.

Appellee has drawn our attention to a recent pronouncement of the United States Supreme Court in a case involving the termination of welfare payments to recipients refusing entry to welfare case workers. While the facts of the case are far from those before us, the principal conclusion concerning the warrantless entry of a government employee to further the public welfare program is relevant. "We therefore conclude that the home visitation as structured by the New York statutes and regulations is a reasonable administrative tool; that it serves a valid and proper administrative purpose for the dispensation of the AFDC program; that it is not an unwarranted invasion of personal privacy;

and that it violates no right guaranteed by the Fourth Amendment." *Wyman v. James,* 400 U.S. 309,    , 27 L. Ed. 2d 408, 419, 91 S. Ct.    ,    (1971).

The proper administration of the City ordinances regulating activities affecting the public health, safety, morals and welfare sanctions such warrantless inspections absent some compelling constitutionally protected private interest which would counterbalance the public requirement for safe buildings.

Therefore, despite appellant's repeated protestations as to the high cost of repairs necessary to restore the buildings and his uncontradicted allegations that vandals at the time of the 1968 riots in Pittsburgh had contributed heavily to the disreputable condition of the structures, the City was entirely within its authority in ordering the structures demolished after considerations of due process had been met. Kronzek expressed no intention to even begin making the necessary repairs within the thirty days mandated by the enabling legislation and he must therefore bow to the superior requirement of the general public in having potentially harmful structures torn down. The lower court order is affirmed.

———

DISSENTING OPINION BY JUDGE MANDERINO:

I dissent because the entry on private property by government inspectors in this case without a warrant is prohibited by the Fourth Amendment to the United States Constitution. *Camara v. Municipal Court,* 387 U.S. 523 (1967); *See v. Seattle,* 387 U.S. 541 (1967).