Myron Wolkoff, Anthony Cognetti, Thomas Francis, Vincent Manzo, and James Doherty, All Councilmen of the City of Scranton, and Eugene J. Peters, Mayor of the City of Scranton, David Davis, Treasurer of the City of Scranton, William P. Feldcamp, Jr., Controller of the City of Scranton, Anthony Batsavage, Director of the Department of Public Safety of the City of Scranton, and the City of Scranton, Appellants, *v.* John Owens, Chester Cimini, Albert Kathalynas, George Zvirblis, Anthony Gustaitis, Peter Malarkey, Joseph Owca, Frank Evans, A. Chester Lenceski, Willard Getz and Albert Richards, Appellees.

Argued October 4, 1973, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*Ralph J. Iori, Jr.,* with him *David J. Reedy, Jr.,* for appellants.

*Anthony P. Moses,* for appellees.

OPINION BY JUDGE BLATT, January 15, 1974:

This action in mandamus questions the propriety of the dismissal of the appellees from the Bureau of Police of the City of Scranton, allegedly made necessary by a lack of funds. At the time of the dismissal, all of the eleven appellees were full-time policemen on the Scranton force who were under 65 years of age, the compulsory retirement age, but who had served over 25 years and who therefore, upon their election, could retire with pension.[1] The policemen were notified by letter dated January 14, 1972 from the Director of Public Safety and the Superintendent of Police that, "[b]ecause of the lack of funds appropriated in the Salary Ordinance for 1972, it is necessary for me to ad-

---

[1] The City of Scranton Police Pension and Retirement Fund was established by Ordinance, File of the Council No. 3 of 1936, amended by File of the Council No. 19 of 1962 and supplemented by the compulsory retirement statute File of the Council No. 51 of 1968. The record reveals no ordinance covering the situation involved herein, where there were also two policemen over 65 years of age who had not yet served the minimum 25 years required to qualify for pension. The City took the position that these two policemen should be retained until they qualified for pension, despite the compulsory retirement statute.

vise you of your retirement effective Saturday, January 15, 1972."

Mandamus has been recognized to be the proper action where the main issue is the propriety of a removal from a position which was heretofore properly held and to which reinstatement is being sought. *Gernert v. Lindsay*, 2 Pa. Commonwealth Ct. 576 (1971). It is undisputed here that prior to January 15, 1972, the appellees had properly assumed and held their positions, and, in seeking reinstatement, the appellees contend that their forced retirement was illegal, improper and discriminatory. To support their charge, they argue that the City continued to employ two policemen who were over 65 years of age, and nine younger police officers hired under a Federal Highway Safety Program. All of these employees, they claim, should have been released before the appellees. The lower court relied on the Act of August 10, 1951, P. L. 1189, Section 9, 53 P.S. §23539 (Act of 1951), which applied to cities of the second class, to justify the forced retirement of employees such as the appellees herein under certain circumstances, but it held that all of these eleven policemen should not have been removed before others on the force. In essence, it concluded that the succession of dismissals was improper.

We also agree that the dismissal of the appellees was improper, but we base our conclusion on the absence of legislative authority for the entire procedure by which the removal was effectuated.

Since 1927, and by virtue of the Act of June 25, 1895, P. L. 275, Section 1, as amended by the Act of March 9, 1927, P. L. 18, 53 P.S. §101, the City of Scranton has been a Second Class A city. *See City of Scranton v. Leo Lynn*, 10 Pa. Commonwealth Ct. 222, 310 A. 2d 451 (1973). When the second class A classification was created, the Legislature provided this new type of municipality with interim regulations by way of the

following broad language: "Until otherwise provided by law, cities of the second class A shall continue to be governed, and shall have all the powers, privileges and prerogatives *now provided* by the laws of the Commonwealth relating to cities of the second class." (Emphasis added.) Act of June 25, 1895, P. L. 275, Section 2, as amended, 53 P.S. §102 (as amended by the Act of March 9, 1927, P. L. 18). Although revisions have been made to the Act, the above quoted section has remained intact and unchanged since its enactment on March 9, 1927 contemperaneous with the creation of the new second class A classification.[2] Each time other parts of the statute were changed, this section was merely re-enacted. This is important in determining the date to which the "now provided" language refers and, therefore, in determining which second class city laws are applicable to second class A cities under the cloak of the Amendment of 1927. The Statutory Construction Act provides that, "[w]henever a statute reenacts a former statute, the provisions common to both statutes shall date from their first adoption. . . . [O]nly the new or changed provisions shall be deemed to be the law from the effective date of the reenactment." Statutory Construction Act of 1972, Act of December 6, 1972, P. L.  , No. 290, 1 Pa. S. §1961.

The first adoption of the "now provided" language was on March 9, 1927 and, because it has not since been amended, it must be construed as referring to the 1927 date. Simply stated, "[u]nless otherwise provided by law, cities of this class are also to be governed by laws regulating cities of the second class, which were in effect when the cities of the second class A were

---

[2] Former section 53 P.S. §102 and §103 have been merged. Since its original enactment in 1895 the Act has been amended thus: March 9, 1927, P. L. 18, §2; August 16, 1951, P. L. 1239, §1; December 8, 1959, P. L. 1719, §1; July 14, 1961, P. L. 649, §2; March 16, 1965, P. L. 3, §1.

created." *Cummings v. Scranton,* 348 Pa. 538, 542, 36 A. 2d 473, 474 (1944).

It is true, of course, that no specific reference is made in the laws of cities of the second class A to police dismissals for economy or lack of funds. Even so, however, the provisions pertaining thereto in the laws of cities of the second class cannot apply to the second class A City of Scranton.

As our Supreme Court held in *Schneider v. Scranton,* 330 Pa. 507, 199 A. 684 (1938), amendments made to the second class city law since 1927 do not apply to cities of the second class A if such class of cities is not mentioned in the amending acts. "That is, until the second class city law should be changed, it applied to second class A cities." *Schneider v. Scranton, supra,* 330 Pa. at 509, 199 A. at 685.

A review of the statutes on this subject clearly indicates, moreover, that the sections of the second class city statutes concerning reductions in force for economic reasons were enacted *after* the 1927 creation of the new municipal classification of second class A cities, and do not include second class A cities in their coverage. The procedure for reducing the number of civil service employees in cities of the second class for reasons of economy, lack of funds, or abolition of position is provided in the Act of May 23, 1907, P. L. 206, Section 20.1, as amended by the Act of June 20, 1947, P. L. 663, Section 1, 53 P.S. §23454; the amendment of 1947 is the section which remains in effect. This was obviously written after the creation of second class A cities and, although the Legislature could have applied the act to these cities, it did not, as evidenced by the clear language: "If for reasons of economy, lack of funds, abolition of position or positions, or for any other reasons it becomes necessary for any *city of the second class* to reduce the number of employees then. . . ." (Emphasis added.) The Civil Service reduc-

tion procedure for second class cities in the Act of 1907 as amended in 1947 therefore, does not apply to the second class A City of Scranton. Furthermore, when that procedure was repealed as to employees in bureaus of police in cities of the second class by the Act of August 10, 1951, P. L. 1189, Section 11, and replaced by the Act of 1951, the Legislature by-passed still another opportunity to include second class A cities in its coverage. The use of the Act of 1951 by the lower court to justify the eligibility of the appellees for dismissal was consequently erroneous; that Act, too, was enacted after the creation of the second class A cities.

The only legislation which could be applicable is the Second Class A City Code which, in fact, permits the dismissal of a policeman only with his written consent or for cause. Act of April 11, 1931, P. L. 38, as amended, 53 P.S. §30471.[3] This Code clearly states: "No regularly appointed policeman in cities of the second class and no regularly appointed policeman or fireman in cities of the second class A, shall be removed or dismissed without his written consent, except by the decisions of court, either of trial or inquiry. . . . Such decisions shall only be determined by trial of charges. . . ." The right to trial arises only when a charge for reasons specified in the Act of April 11, 1931, P. L. 38, No. 30, as amended, 53 P.S. §30472 is brought, to wit, disability for service, neglect, violation of law or duty, inefficiency, intemperance, disobedience of orders, unbecoming official or personal conduct, or intoxication while on duty. There is no right to trial therefore, for a non-fault dismissal such as that concerned in this case.

---

[3] This statute is entitled "An Act Regulating the removal or dismissal of policemen and firemen in cities of the second class A and the removal of policemen in cities of the second class." This statute was repealed as to cities of the second class by the Act of June 15, 1937, P. L. 1761, Section 2.

Because the Legislature has not prescribed a procedure for the dismissal of policemen in second class A cities in the event of reductions in force for economic reasons, and because the written consent which the Legislature has required in non-fault dismissals such as that here involved, has not been obtained from the appellees herein, we must affirm the finding of the lower court that the dismissals were improper and its order that each appellee be reinstated with back pay from the date of his dismissal to the date of his reinstatement, retirement or death, whichever is first. In doing so, we do not decide the other issues raised by the parties but merely direct that the appropriate legislative mandate regarding dismissals under the circumstances of this case be followed.

CONCURRING OPINION BY PRESIDENT JUDGE BOWMAN:

I concur in the result reached by the majority for the reason that the record, in my opinion, clearly establishes that the City of Scranton in discharging certain policemen while retaining police officer trainees with less seniority, did not adopt a rational or fair program in reducing the police force for want of sufficient funds. I also agree that the lower court erred in the statutory law to be applied.

I dissent, however, from what I understand to be the view of the majority that the City of Scranton cannot, for reasons of economy or want of sufficient funds, reduce the size of the police force without the consent of the policemen affected or through the procedures and adjudications required by the Act of April 11, 1931, P. L. 38, *as amended,* 53 P.S. §§30471-30475, pertaining to the removal of policemen or firemen *for cause* associated with their individual conduct or performance of duty.

Certainly any local government, charged with the duty and empowered to regulate its affairs, has the

power and authority—absent contrary statutory mandate—to reduce the number of persons employed by it for any proper purpose subject only to requirements of reasonableness and fairness in exercising such power and within the framework of any lawful provision of a collective bargaining agreement that may be applicable.

Judge ROGERS joins in this concurring opinion.