Borough of Canonsburg, Appellant *v.* William A. Flood, Appellee.

Argued May 5, 1978, before Judges CRUMLISH, JR., WILKINSON, JR. and BLATT, sitting as a panel of three.

*Roger J. Ecker,* with him *Peacock, Keller, Yohe, Day & Ecker,* for appellant.

*Stanford A. Segal,* with him *Gatz, Cohen, Segal & Koerner,* for appellee.

OPINION BY JUDGE WILKINSON, JR., June 13, 1978:

The issue presented in this appeal is whether the Washington County Court of Common Pleas erred in sustaining appellee's action in mandamus which sought to require appellant Borough of Canonsburg (Borough) to reinstate him as chief of police following the adoption of an ordinance which purportedly abolished that position. We find no error.

Appellee became the Borough's chief of police in 1966, having successfully completed a civil service

examination for that position. Since 1969, the Borough and its police force have had frequent disputes in labor negotiations pursuant to the Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §217.1 et seq. (commonly known as "Act 111"). An agreement was reached for the years 1972-74 but, in July 1975 (while the agreement was still in effect under a renewability clause), the police force brought suit against the mayor and the borough council, alleging that the Borough was not abiding by certain terms of the agreement. Appellee's name appears as a plaintiff in the suit, as does the name of every member of the police force at that time. The Borough's preliminary objections to the suit were dismissed, and that decision was affirmed by this Court (*Flood v. Borough of Canonsburg,* 28 Pa. Commonwealth Ct. 248, 368 A.2d 348 (1977)).

By request of the Borough, negotiations toward a new contract began later in July 1975. Appellee's name was included among those of the police force who wished to be considered members of the bargaining unit, but he did not participate in the negotiations. An impasse was reached in September 1975 and an arbitrators' award for the period 1976-78 was issued in November 1975 from which award the Borough has appealed. Appellee was included within the terms of the award, one ground upon which the Borough based its appeal.

During the last several months of 1975, the borough council was in the process of preparing a budget for 1976. An initially-proposed millage increase of approximately 15 to 18 mills was reduced to 5.5 mills when a tentative budget was adopted on December 17, 1975. At a meeting on December 31, 1975, additional budget reductions of $4000 were made in the allocations for police cars and consulting fees. Most significantly, the borough council adopted an ordinance

which abolished the position of chief of police, effective the next day. The minutes of that meeting reveal no discussion of the savings to be effected by the abolition; the only comment made prior to the adoption of the ordinance was that by a councilman who stated: "[A]s of 12:00 midnight, December 31, 1975, the Chief of Police is a member of the Negotiating Team for the F.O.P. [Fraternal Order of Police]." (However, corrections to the minutes approved by a new borough council in January 1976 inserted the words "for economic reasons" in the description of the ordinance and the reference to appellee's membership on the "Negotiating Team" was corrected to read "Bargaining Team.") Immediately after the abolition was approved, the mayor was voted a salary increase of $500, a figure nearly identical to an amount awarded to appellee under the arbitration award but which the Borough had disputed and failed to pay him. The vote on both motions was 6-3 and the same council members favored or opposed both identically.

Approximately 10 days later, the mayor created the position of "officer-in-charge" within the police department and appointed a sergeant (the highest rank other than chief under the old structure) thereto. The sergeant, although not receiving higher pay than the other sergeants on the force, has responsibilities and emoluments nearly identical to those formerly belonging to the chief. Appellee was retained as a patrolman at no reduction in his pay. However, even though the arbitration award granted all members of the police force a $500 salary increase for 1976, the borough council denied it to appellee on the ground that he was already earning more than any other patrolman.

In February 1976 the new borough council made further deletions from the budget. One patrolman, the least senior, was dropped from the force. The

budget was finally adopted on February 13, 1976, with a three-mill increase.

Appellee brought this action alleging, *inter alia,* that the elimination of his former position was not based on reasons of economy or efficiency but rather was to carry out threats by members of the borough council to so act if appellee refused to abandon his claims in the July 1975 suit brought by the entire police force.

A hearing was held before the Washington County Court of Common Pleas in December 1976. Appellee testified that one member of the borough council had told him that it had been very embarrassing to have been served with the July 1975 complaint and that appellee "should not have done that." Appellee reported that this same councilman told him on another occasion that he would be demoted if he did not divorce himself from the police officers' bargaining unit. Appellee also testified that the Borough solicitor and another councilman had both similarly threatened him on different occasions during November and December 1975. Two police officers testified that they were told by a different councilman in December 1975 that appellee "won't be chief at the end of the year" whereupon yet another councilman had told his colleague that he "was talking too much." A fifth councilman testified that still another councilman looked in appellee's direction at a gathering and said "he'd get that man over there." All those who allegedly made such threats unequivocally denied having done so or having heard anyone else do so. The testimony was also in total conflict as to whether the councilmen were advised in advance that the ordinance abolishing the position of police chief would come to a vote on December 31, 1975 or even had been discussed prior to that time.

The Borough offered testimony to support its argument that the elimination was based upon economic considerations. The Borough manager testified that he had calculated the savings from such elimination at approximately $3700-$2600 in salary increase and $1150 in overtime both of which were granted to appellee under the arbitration award. The borough manager admitted on cross, however, that those figures represented items which would be granted to appellee even if it was decided that he was a patrolman instead of the chief.

The common pleas court found that appellee would have remained the chief of police had he not chosen to join the police officers' bargaining unit and that the "allegation of 'economic reasons' was for the purpose of abolishing a position council could not otherwise eliminate." The court ruled that the ordinance purporting to abolish the position was null and void and ordered that appellee be reinstated as chief of police with such salary and benefits (retroactive to January 1, 1976) as may be determined to be due him in the pending litigation involving the arbitration award. The common pleas court, sitting en banc, dismissed the Borough's exceptions. This appeal followed.

The Borough acknowledges, as it must, that its action in abolishing the position of police chief is valid only if exercised in good faith. *E.g., Schauer v. Whitehall Borough,* 413 Pa. 6, 194 A.2d 318 (1963). We have little trouble in deciding that the record amply supports the common pleas court's finding of bad faith in this case and suffices to rebut the presumption of regularity accorded the actions of municipal officers.

The Borough relies on the cases of *Gruver v. Howell,* 28 Pa. Commonwealth Ct. 296, 368 A.2d 920 (1977) and *Genes v. City of Duquesne,* 27 Pa. Com-

monwealth Ct. 620, 367 A.2d 327 (1976). We find such reliance meritless, for in both cases legitimate grounds of economy or efficiency existed to justify the employee terminations. Nor can we accept the Borough's attempted analogies to the cases of *McGuckin v. West Homestead Borough*, 360 Pa. 311, 62 A.2d 23 (1948) and *Mamallis v. Millbourne Borough*, 401 Pa. 375, 164 A.2d 209 (1960). In *McGuckin, supra,* the question was whether a police chief whose office was abolished for undisputed reasons of economy was entitled to be retained as a policeman, a point that is not at issue here. In *Mamallis, supra,* the issue was whether abolition of the office of police chief was proper, but, there, unlike the case before us, no affirmative proof of bad faith was offered.

The Borough's final contentions are that a writ of mandamus is improper in this case and, even assuming that mandamus is proper, it is the Borough's civil service commission, rather than the Borough, against which the writ should be sought. We reject both arguments. The use of mandamus to challenge the abolition of the position of police chief has been upheld by our Supreme Court, *e.g., Schauer, supra,* and, since there has been no allegation by either party that appellee committed any offense for which a civil service hearing is required under The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §45101 et seq., the Borough is the proper defendant here.

Accordingly, we will enter the following

#### ORDER

Now, June 13, 1978, the order of the Washington County Court of Common Pleas at No. 306 January Term, 1976 A.D., dated May 3, 1977, is hereby affirmed.