Thomas J. Murray, Jr. and Beatrice Murray, his wife, and Larry A. Deminski v. The City of Wilkes-Barre and The Wilkes-Barre City Building Board of Appeals, Appellees. Thomas J. Murray, Jr. and Beatrice Murray, his wife, Appellants.

510

Argued September 29, 1978, before Judges MEN-
CER, ROGERS and CRAIG, sitting as a panel of three.

*James F. Geddes, Jr.,* with him *Silverblatt &
Townend,* for appellants.

*Carl N. Frank,* for appellees.

OPINION BY JUDGE ROGERS, November 17, 1978:

This is an appeal by owners of buildings from an
order of the Court of Common Pleas of Luzerne
County, affirming a decision of the Wilkes-Barre City
Building Board of Appeals which in turn sustained
an order of the City Housing and Building Inspectors
that the appellants' buildings be put in a state of re-
pair on or before March 18, 1977 or that they be
razed.

The appellants, Mr. and Mrs. Murray, have legal title[1] to two sets of row houses located in the City of Wilkes-Barre. Over the past ten years they have received numerous notices from the city that these dwellings were in violation of building and housing codes. Mr. Murray testified in hearings before the Building Board of Appeals that he cured some of the defects but admitted that he ignored others. He also conceded that he made no repairs other than normal maintenance after 1972. On February 11, 1977 the City Housing and Building Inspectors notified the appellants of numerous violations of the Wilkes-Barre Building and Housing Codes and, as earlier noted, ordered that the violations be ended by March 18, 1977 or that the properties be razed by the city pursuant to provisions of the two Codes.

The City's Housing Code provides:

Section 108.11. When upon re-examination, after the expiration of the time for compliance the Enforcement Officer finds that the violations have not been corrected, he is authorized to cause such dwellings to be repaired, altered, improved, or demolished or razed.

The City's Building Code provides:

Section 8. Unsafe buildings.

(a) *Removal or repair of buildings.* Whenever any building, structure, or part thereof, or appurtenances thereto, shall have been declared dangerous or unsafe by the building inspector's office, the building shall, unless made safe and so certified by the building inspector's office, be demolished, taken down or re-

---

[1] On January 31, 1977 the appellants entered into an agreement to sell the properties to one Larry A. Deminski, who thus has an equitable interest in the property. Mr. Deminski is a named appellant but has not otherwise participated in this appeal.

moved. The term 'dangerous' or 'unsafe' shall include buildings structurally unstable, unsanitary, inadequately equipped with exit facilities, constituting a fire hazard, unsuitable or improper for the use or occupancy to which it is put, constituting a hazard to health or safety because of inadequate maintenance, dilapidation, including but not limited to lack of coating or recoating of exterior surfaces that are not inherently resistent to deterioration with a protective coating of paint or other suitable preservative, and obsolescence or abandonment, or because of lack of proper sanitation, or because of unsafe electrical wiring or appliances, or otherwise dangerous to life or property.

The City of Wilkes-Barre has adopted a home rule charter and the Codes just mentioned were enacted in the exercise of the powers conferred on it as a home rule charter municipality by the State Constitution and the Home Rule Charter and Optional Plans Law, Act of April 13, 1972, P.L. 184, *as amended*, 53 P.S. §1-101 et seq.

The Murrays appealed the order of the Inspectors to the Building Board of Appeals which held hearings and sustained the order. They subsequently appealed to the Court of Common Pleas which also heard testimony and affirmed the order of the Board. This appeal followed.

The appellants first say that the court below erred in affirming the order of the Building Board of Appeals because the evidence presented at the hearings did not support the harsh remedy of demolition. They say that the granting of additional time to make repairs would have been the proper remedy, citing *Groff v. Borough of Sellersville*, 12 Pa. Commonwealth Ct. 315, 314 A.2d 328 (1974). The order com-

plained of afforded the appellees five weeks within which to repair their buildings. The record shows that they had received numerous notices of code violations during the ten years preceding this final notice and took no effective action in compliance. The court below noted that the many areas in need of extensive repair included the outside walls, window frames, chimneys, foundations, front porches, entrances, ceilings, walls and electrical wiring. Having allowed these conditions to exist and indeed worsen over a ten year period in effective disregard of official demands for their correction, the appellants' complaint based on insufficient notice was properly rejected below.

The appellants' reliance on *Groff* is misplaced. In that case we held that a court should not *devise an equitable remedy* that is harsher than necessary to abate a nuisance. In this case the court was not asked to fashion a remedy but to review for error the order of an administrative body acting under powers granted by local ordinances and a home rule charter.

The appellants next say that the city should have employed the procedures provided in Section 4140 of the Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. §39140 for the abatement of public nuisances. This argument is wholly without merit. Wilkes-Barre having adopted a home rule charter, its affairs with respect to the subject at hand were no longer governed by the Third Class City Code. Article IX, Section 2 of the Pennsylvania Constitution provides: "A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time." The Legislature has not denied home rule municipalities the power to abate dangerous housing conditions;

on the contrary, Section 302(b)(iv) of the Home Rule Charter and Optional Plans Law, 53 P.S. §1-302(b) (iv), after naming subjects not subject to disposition by home rule legislation, provides: "Nothing herein contained shall be construed to in any way affect the power of any municipality to enact and enforce ordinances relating to building codes or any other safety, sanitation or health regulation pertaining thereto...."

The appellants also say that the procedures of the Wilkes-Barre Housing and Building Codes violate the due process rights of the appellants because the Inspectors were not required to conduct a hearing before issuing the notice that the appellants' buildings be repaired or razed. The appellants were given notice of the Inspectors' demolition order and were provided sufficient time to seek and obtain a hearing before the Building Board of Appeals, and on appeal, in the court below. This procedure looking toward the elimination of unsafe buildings is almost identical to that which we approved in the case of *Pittsburgh v. Kronzek*, 2 Pa. Commonwealth Ct. 660, 280 A.2d 488 (1971). Further, since their buildings seem to be extant nearly two years after service of notice they complain of, the appellants' criticism of the procedures in question as inadequately protecting their interests lacks force in reality.

Finally, the appellants say that they were denied due process because neither the court below nor the Building Board of Appeals made the specific finding that the buildings in question constituted a "nuisance." This argument is sophistical. The appellants' buildings were found to be in unsafe condition, defined in Section 108.1 of Wilkes-Barre's Housing Code as "dangerous to life, limb, or property." The buildings were also found to be "dangerous or unsafe" by reason of almost every one of the conditions enumerat-

ed in Section 8 of the Wilkes-Barre Building Code, reproduced earlier in this opinion. In *Pittsburgh v. Kronzek, supra,* we held that the requirement of the demolition of buildings found to be in dangerous condition is a proper and necessary exercise of the police power. To deny this power to a municipality merely because such conditions are not also characterized by the fact finders as nuisances would be absurd.

Order affirmed.

ORDER

AND Now, this 17th day of November, 1978, the order of the Court of Common Pleas of Luzerne County dated August 30, 1977 is affirmed.