Michael Balcrius, Appellant *v.* Mayor Eugene Hickey et al., Appellees.

Argued March 6, 1981 before Judges BLATT, CRAIG and WILLIAMS, JR., sitting as a panel of three.

*Lawrence A. Durkin, Tellie, Durkin, Weinberger, Murphy & Piazza,* for appellant.

*James A. Doherty, Jr.,* with him *John J. Brazil,* for appellees.

OPINION BY JUDGE WILLIAMS, JR., October 26, 1981:

This is an appeal from an Order of the Court of Common Pleas of Lackawanna County dismissing exceptions filed by appellant, Michael Balcrius, to that court's prior opinion, dated December 14, 1979. In its earlier decision, the lower court had denied appellant's prayer for relief and entered judgment in favor of appellee, City of Scranton. We reverse.

In June, 1977, the budgeted position of Captain of the Uniform Division, Grade 9, in the Scranton Police Department became vacant. Thereafter, on October 14, 1977, the Civil Service Commission of the City of Scranton, acting on the request of the then Mayor, Eugene Peters, administered a promotional test to secure a list of eligible candidates to fill the vacant position. Appellant, Michael Balcrius, placed third on the eligibility list and was duly certified as eligible by the Commission. On December 6, 1977, Mayor Peters promoted Balcrius to the vacant post. Balcrius held

that position until January 6, 1978, when he was notified that he was going to be reinstated to his previous rank of Detective. He received a photocopy of a letter written by the Chief of Police to the Director of Public Safety stating that the position of Captain of the Uniform Division, Grade 9, had been eliminated from the City of Scranton's 1978 proposed budget. Appellant Balcrius then resumed his former post.

On or about January 18, 1978, a City of Scranton Police Captain was demoted, creating a vacancy in the position of Captain, Grade 7. That vacancy was filled in May, 1978, when a policeman other than appellant was promoted to the post by the current Mayor, Eugene Hickey. Mayor Hickey made his appointment from a revised eligibility list supplied by the Civil Service Commission.

On June 19, 1978, Balcrius filed a complaint in mandamus against Mayor Eugene Hickey and the City of Scranton alleging, *inter alia,* that his promoted position of Captain, Uniform Division, Grade 9, had been improperly deleted from the 1978 City of Scranton Budget and that he had sustained an improper reversion to his prior rank of Detective as a result of this action on January 6, 1978. He alleged further that he was entitled to reinstatement to his promoted position and rank or in the alternative entitled to promotion to the vacant position of Captain, Grade 7. Finally, he asserted that the Defendants (Mayor Hickey and City of Scranton) never afforded him a hearing pursuant to the Local Agency Law[1] prior to his reversion in rank.

The matter was scheduled for trial, and on December 14, 1979, the Court of Common Pleas of Lackawanna County rendered a decision in favor of the City of Scranton. That court held that the City of Scranton

---

[1] 2 Pa. C. S. §551 *et seq.*

had inherent authority to eliminate appellant's position for economic reasons; that since appellant's appointment was temporary in nature the City had no obligation to place him in a special listing category for the position of Captain, Grade 7; and that the City had conformed with the Local Agency Law in its adjudication of appellant's job rights. Balcrius filed exceptions to the lower court's decision, asserting that the trial judge erred in his disposition of this case. Argument on those exceptions was held in June, 1979. Subsequent thereto, a court en banc, in an opinion written by Judge MUNLEY, dismissed appellant's exceptions and affirmed the order of December 14, 1979. Appellant then filed the instant appeal to this Court.

Appellant contends that the actions of the City of Scranton in reinstating him to his former position were improper and in violation of procedures set forth in the City's Home Rule Charter.

The first issue to which we will speak is whether appellant's appointment to Captain, Uniform Division, Grade 9, was temporary or permanent in nature. Only if appellant's job is characterized as permanent is he afforded a protected status under the Civil Service Regulations for the City of Scranton. The lower court ruled that appellant's appointment was temporary and therefore he was properly reinstated to his Detective rank after the Captain, Uniform Division, Grade 9 position was eliminated from the budget. It based its conclusion on the fact that appellant's appointment did not exceed six months and that appellant had "constructive or inferential, if not actual knowledge [of the term of his assignment] by virtue of the tentative budget which had been submitted to council and made available for public inspection." We find the lower court's conclusion to be in error.

Rule XII of the Civil Service Regulations for the City of Scranton sets forth the procedures to be fol-

lowed for temporary appointments. That rule states that an appointment is temporary when required for a period not to exceed six months. Any such appointment may be made *only after* notice by the appointing officer to the Commission of the temporary nature of the appointment and after due notice to the person accepting the appointment of such condition. The terms of that notice must include the duration of the appointment, the rate of compensation, and the conditions of employment. In the instant case, even assuming that the appellant was aware of the elimination of his position from the tentative budget, appellant never received the requisite notice of the temporary character of his position as is mandated by the Civil Service Regulations. Thus, it is readily apparent that appellant's position did not qualify as temporary.

Since we have decided that appellant's appointment was of a permanent nature, we must address ourselves to the propriety of the abolishment of appellant's position and his resultant demotion in rank. The lower court decided the appropriateness of appellant's reduction in rank on the authority of the City of Scranton to eliminate appellant's position for economic reasons. The court rationalized that the City of Scranton, as a home rule city, is no longer governed by state legislation otherwise applicable to Second Class A cities and may exercise any power or perform any function not denied by the Commonwealth's Constitution, by the City's Home Rule Charter, or by the General Assembly. Such powers, that court reasoned, necessarily included the power to effect a reduction in force for economic reasons. However, we disagree that such power was validly applied in this case.

The lower court's opinion is inconsistent with this Court's ruling in the case of *Wolkoff v. Owens*, 12 Pa. Commonwealth Ct. 74, 314 A.2d 545 (1974). In *Wolkoff,* eleven police officers were forced to retire from

the Bureau of Police of the City of Scranton due to a lack of funds. The officers' discharge was accomplished through the sending of letters notifying them of their effective retirement dates. In that case, this Court ruled that the dismissal of the police officers for economic reasons was improper because the procedure by which the removal was effectuated was not based on legislative authority. We held that in dealing with such matters, we must apply the provisions of the Second Class A City Code. That Code provides in pertinent part as follows:

> No regularly appointed policeman in cities of the second class, and no regularly appointed policeman or fireman in cities of the second class A, shall be removed or dismissed without his written consent, except by the decisions of court, either of trial or inquiry. . . .[2]

It is clear that the Legislature has not prescribed a procedure for the dismissal of policemen in Second Class A cities in the event of reductions in force for economic reasons. Therefore, in order to properly effect a non-fault dismissal of a police officer in accordance with legislative authority, the written consent of the officer must be obtained. *Wolkoff, supra.*

In the present case, we are guided by our decision in *Wolkoff* in ruling that the City of Scranton acted wrongly in dismissing appellant from the position of Captain, Uniform Division, Grade 9.

It is noteworthy, also, that the evidence in the present case does not support the city's allegation that the abolition of the position of Captain, Uniform Division, Grade 9, resulted in an economic saving to the city. The proposed 1978 budget for the City of Scranton indicated that while appellant's position was removed

---

[2] Section 1 of the Act of April 11, 1931, P.L. 38, *as amended*, 53 P.S. §30471.

from the budget, a new position was created at a higher salary.

Finally, appellant contends that should this court determine that the city properly eliminated the Captain, Grade 9 position, he was entitled to be appointed to the vacant position of Captain, Grade 7. We need not consider that contention since we find that the City of Scranton improperly abolished appellant's position.

For all of the foregoing reasons, we are compelled to hold that the City of Scranton's actions in extinguishing the position of Captain, Uniform Division, Grade 9, were improper and in violation of appellant's due process rights.

Accordingly, we must reverse the decision of the lower court and order that appellant be reinstated to the position of Captain, Uniform Division, Grade 9.

ORDER

AND Now, the 26th day of October, 1981, the order of the Court of Common Pleas of Lackawanna County at No. 13 of September Term 1978 is reversed, and the above appellant is ordered reinstated to his position of Captain of the Uniform Division, Grade 9.

Judge WILKINSON, JR. did not participate in the decision in this case.

Judge CRAIG concurs in the result only.

---

DISSENTING OPINION BY JUDGE BLATT:

I regret that I must dissent.

I agree with the majority's initial conclusion that, absent proper notice to the appellant of the temporary nature of the appointment, his promotion did not qualify as temporary under Rule XII of the Civil Service Regulations of the City of Scranton (Civil Service Regulations) and was, therefore, permanent in nature.

The affairs of the City of Scranton, however, are governed by a home rule charter adopted subsequent to our decision in *Wolkoff v. Owens,* 12 Pa. Commonwealth Ct. 74, 314 A.2d 545 (1974). As noted by the lower court, Scranton, as a home rule charter community, is consequently no longer governed by state legislation otherwise applicable to Second Class A cities and may, pursuant to Article IX, Section 2 of the Pennsylvania Constitution, now exercise any power or perform any function not denied by the State Constitution, by the city's home rule charter or by the General Assembly, *Murray v. City of Wilkes-Barre,* 38 Pa. Commonwealth Ct. 509, 394 A.2d 1055 (1978). The city, therefore, may not enact any ordinance which is inconsistent with any previously enacted statute which affects the rights, benefits or working conditions of any employee of a political subdivision. Section 302(b) of the Home Rule Charter and Optional Plans Law, Act of April 13, 1972, *as amended,* 53 P.S. §1-302(b). So, in matters concerning city employees, I believe that the Second Class A City Law, Act of April 11, 1931, P.L. 38, *as amended,* 53 P.S. §30471, would apply to Scranton only in the absence of a home rule charter or, in the presence of a charter, if the charter contained a provision inconsistent with a prior state statute. *See Murray v. City of Wilkes-Barre, supra.*

Article 8, Section 801 of the Home Rule Charter of the City of Scranton protects the rights of individuals who have been promoted to positions in the city service not to be removed from those positions except for just cause, but removal from an existing position is not synonomous with abolition of the position. That is to say that, under Scranton's home rule charter, in the absence of just cause, an employee cannot be removed except for just cause from a position as long as the position continues to exist. This proscription, how-

ever, does not prohibit the city from abolishing an existing position, as is recognized by the provisions of Rule XIII of the city's Civil Service Regulations which establishes procedures to be followed "[w]henever any permanent position in the Competitive Class is abolished or made unnecessary."

The right of municipalities to abolish positions for economic reasons has been long recognized, of course, *Borough of Canonsburg v. Flood,* 36 Pa. Commonwealth Ct. 81, 387 A.2d 951 (1978) and a hearing is not required where a police officer is affected by a reduction in the size of the police department undertaken for reasons of economy. *Almy v. Borough of Wilkinsburg,* 53 Pa. Commonwealth Ct. 46, 416 A.2d 638 (1980).

It seems to me that there is no longer a position here to which a legal entitlement exists and, therefore, no position to which the claimant can compel his reinstatement. Consequently, a hearing prior to reversion to his previous rank would be unavailing. *Mamallis v. Millbourne Borough,* 401 Pa. 375, 164 A.2d 209 (1960).

Furthermore, the appellees contend that the appellant's appointment was invalid because it was made in violation of the examination and grading procedures set forth in the city's Civil Service Regulations, a question which the lower court, having determined the appointment to be temporary, declined to address and which the majority, now having found the position to be permanent, has failed to decide.

Rule II, No. 2 of the city's Civil Service Regulations provides that:

No appointing officer shall appoint, promote or employ any subordinate officer or employee in the Classified Service, or in any way change the official status of any such officer or employee,

except in accordance with these rules and no such appointment, promotion, employment or change of status made in contravention of any provision of these rules shall be valid.

In view of the controlling nature of the city's Civil Service Regulations, it appears to me that, once the majority has determined the appointment to have been a permanent one, it should remand the matter to the court below for a determination as to whether or not the appointment was validly made. Although the claimant cannot seek reinstatement to Grade 9, inasmuch as that position no longer exists, he can assert a right to promotion to the position of Captain Grade 7, but only if his original promotion was made by means of a valid appointment to a permanent position. *Radosti v. Township of Lower Makefield,* 30 Pa. Commonwealth Ct. 297, 373 A.2d 1156 (1977).