Harold Bauer, Thomas Evans, John Gaughan, Arthur Ginader, Walter Goerlitz, Arthur Heightman, Robert Jones, Robert Kuhn, William Lewis, Robert Magor, Dominick Renda and Edward Schlesser, Appellants, v. Eugene J. Peters, Mayor of the City of Scranton, Anthony J. Batsavage, Director of the Department of Public Safety of the City of Scranton, and The City of Scranton, Appellees.

Argued October 8, 1974, before President Judge Bow-MAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT. Judge KRAMER did not participate.

*James A. Kelly*, for appellants.

*Ralph J. Iori, Jr.*, with him *David J. Reedy, Jr.*, for appellees.

OPINION BY JUDGE BLATT, January 31, 1975:

This appeal involves an action in mandamus by twelve firemen seeking reinstatement to the Bureau of Fire of the City of Scranton after having been discharged therefrom because of insufficient funds. Upon an agreed set of facts, the Court of Common Pleas of Lackawanna County refused reinstatement and the firemen appealed to this Court.

The firemen here concerned were all notified individually by letters dated January 14, 1972 from the Director of Public Safety and the Chief of the Bureau of Fire (appellees) that "[b]ecause of the lack of funds appropriated

in the salary ordinance for 1972 it is necessary for me to advise you of your retirement effective Saturday, January 15, 1972." At that time, all twelve were full-time firemen under the age of 65 and all had served at least 25 years so that all were entitled to pensions under the local firemen's pension fund ordinance. They did not consent in any way to dismissal and, in seeking reinstatement, they contend that their forced retirement was illegal.

The lower court, in upholding the dismissals, relied upon the Act of June 27, 1939, P.L. 1207, 53 P.S. §23497, which provides that where economically necessary the total number of fire bureau employees may be reduced in cities of the *Second Class* by retirement of those employees eligible for retirement under the terms of the local firemen's pension fund ordinance.

This Court has held recently, in a case almost identical to the one at hand, that a similar statute relating to police department employee reduction for cities of the Second Class[1] does not apply to the City of Scranton, which is a city of the *Second Class A. Wolkoff v. Owens,* 12 Pa. Commonwealth Ct. 74, 314 A. 2d 545 (1974). We concluded there that, unless otherwise provided by statute, Second Class A cities are governed only by such laws regulating cities of the Second Class as were in effect on March 9, 1927, the date when the legislature created the classification of cities of the Second Class A. The Act of March 9, 1927, P.L. 18, *amending* the Act of June 25, 1895, P.L. 275, 53 P.S. §102; *accord, Cummings v. Scranton,* 348 Pa. 538, 36 A. 2d 473 (1944). We further held that, because no employee reduction statute applied to Second Class cities at the time when Second Class A cities were provided for, and because no similar statute has since been promulgated for Second Class A cities, the City of Scranton was legally powerless to dismiss the

1. The Act of August 10, 1951, P.L. 1189, 53 P.S. §23539.

eleven full-time policemen there concerned according to the provisions applicable in cities of the Second Class where reductions in force are required for economic reasons.

Similarly, we must order the reinstatement of the firemen who are the appellants here. Their dismissals were also illegal under that correctly applicable statutory law.

The appellees, of course, have asked us to reconsider our *Wolkoff* decision, and we have carefully reviewed it again.

We must once more conclude, however, that the principles established therein are correct and we believe that they apply equally as well in the case at hand.

The applicable legislation here limits the dismissal of firemen employed in a city of the Second Class A by providing that "no regularly appointed policeman or fireman . . . shall be removed or dismissed without his written consent, except by decisions of court, either of trial or inquiry . . . ." Act of April 14, 1931, P.L. 38, *as amended,* 53 P.S. §30471. Written consent is clearly missing here, and a court of trial or inquiry may not be activated under the statute except upon charges of disability for service, neglect, violation of law or duty, inefficiency, intemperance, disobedience of orders, unbecoming official or personal conduct, or intoxication while on duty. Act of April 14, 1931, P.L. 38, *as amended,* 53 P.S. §30472. No such charges were made here, either. The appellants, therefore, neither having consented to dismissal nor having been charged before a court of trial or inquiry, were improperly dismissed.

The appellees cite authority which we feel compelled to distinguish. *Leary v. Philadelphia,* 314 Pa. 458, 172 A. 459 (1934), and *Essinger v. New Castle,* 275 Pa. 408, 119 A. 479 (1923), were cases involving policemen and firemen dismissals respectively, and they make clear the proposition that: "Civil service acts are designed to

secure the appointment of competent public servants, and protect them in their employment from attacks on personal grounds, so long as they are well behaved. They are not intended to retain in office at public expense those whose services may be dispensed with for economy . . . . 'These statutes are not intended to affect or control the power of the city counsel, or the executive officers of the city, to abolish offices when they are no longer necessary, or for reasons of economy. They are not intended to furnish an assurance to the officer or employee that he will be retained in the service of the city after the time when his services are required. They do not prevent his discharge in good faith without a trial, and without notice, when the office or body is abolished as unnecessary, or for reasons of economy.' 2 Dillon Municipal Corp. (5th Ed.) 805." *Essinger, supra,* 275 Pa. at 411, 119 A. at 480; *accord Leary, supra,* 314 Pa. at 462-463, 172 A. at 461.

The statute restricting the dismissals in the instant case, however, was not a civil service act, but was merely an act separately regulating the removal or dismissal of policemen and firemen in cities of the Second Class A. In both *Essinger* and *Leary,* the Supreme Court warned that constitutional provisions or legislative enactments apart from the Civil Service Act could further restrict the power of a municipality to discharge its employees. In following our decision in *Wolkoff,* therefore, we merely heed that warning and apply the applicable legislation here as it is written.

We recognize, of course, the somewhat anomalous situation which results. The legislature has seen fit to provide for employee reduction procedures where economically necessary in cities of the Second Class.[2] It has done

---

2. Act of June 27, 1939, P.L. 1207, 53 P.S. §23497, pertaining to fire bureau employees; Act of June 20, 1947, P.L. 663, *amending* the Act of May 23, 1907, P.L. 206, 53 P.S. §23454, pertaining to city employees generally; and the Act of August 10, 1951, P.L. 1189, 53 P.S. §23539, pertaining to police bureau employees.

the same in regard to cities of the Third Class.[3] It has failed to make any such provision, however, for cities of the Second Class A. We do not know the reason for this statutory omission and may well presume that it resulted from a legislative oversight. This is a situation, however, which this Court is powerless to remedy, much as we may regret its existence. If there is to be a correction, it must be a legislative one. We must, therefore, reverse the decision of the court below and direct that the appellants herein be reinstated with backpay from the date of dismissal to the date of reinstatement, retirement, or death, whichever in each case is first.

---

3. Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. §39408.