# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lynn Dowds,                  :

          Appellant       :

                       :

        v.             : No. 1826 C.D. 2016

                       : Argued:  May 1, 2017

                       :

Zoning Board of Adjustment    :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE JULIA K. HEARTHWAY, Judge
                  HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**SENIOR JUDGE COLINS**             **FILED:  June 27, 2017**

Before this Court is the appeal of Lynn Dowds (Appellant) of the September 29, 2016 order of the Court of Common Pleas of Philadelphia County (Trial Court), which granted in part, and denied in part, her appeal of the December 9, 2015 decision of the Zoning Board of Adjustment of the City of Philadelphia (ZBA).  For the following reasons, we affirm the order of the Trial Court.[1]

---

[1] Where the trial court has taken no additional evidence, appellate review is limited to determining whether the zoning hearing board committed an error of law or a manifest abuse of discretion.  *Hertzberg v. Zoning Board of Adjustment*, 721 A.2d 43, 46 (Pa. 2004).  An abuse of discretion will be found only where the zoning hearing board's findings are not supported by substantial evidence.  *Id*.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

This matter arises out of a May 23, 2014 application filed with the Philadelphia Department of Licenses and Inspections (L&I) by George Twardy, Jr. and Catherine Twardy (Owners), owners of a property located at 1026 Winter Street, Philadelphia, Pennsylvania (Property), for a zoning/use registration permit for the demolition of the existing structure, a two-story building used as a law office, and erection of a six-story structure with an accessory roof deck, a pilot house and an interior parking garage on the first floor; the proposed structure's second floor would be used as a law office and floors three through six would hold twelve dwelling units. (January 2015 ZBA Findings of Fact (F.F.) and Conclusions of Law (C.L.), F.F. ¶ 1.)

The proposed six-story structure, its residential and office uses, and number of parking spaces are permitted as of right by both previous and current zoning designations; however, L&I determined that the ground accessory parking garage required a special exception in the Property's CMX-4 zoning district. Owners then filed a request for a special exception for an interior rear covered parking garage to accommodate eight vehicles.[2] Subsequent to the submission of their original permit application, in addition to the L&I determination regarding the

---

[2] Pursuant to the Philadelphia Zoning Code, the above ground accessory parking garage requires special exception approval from the ZBA. According to Owners' Application for Special Exception, dated July 15, 2014, "[d]ue to the shape of the lot, having a covered parking area as the first floor is the only feasible way to provide the required spaces so as to have the least amount of [e]ffect on the surrounding properties. The covered parking area will not encroach on the required open space or add any additional height to the building beyond what is allowable." (Certified Record.) The record indicates that there is currently open air surface parking at the rear of Property to accommodate up to seven to eight vehicles and that ZBA granted a certificate for use as a private parking lot in 1954. The proposed rear parking is open on three sides and gated in the front, with four parking spaces augmented by car lifts, to double the amount of onsite parking spaces from four to eight.

requirement of a special exception for the interior parking garage, Owners also received a correction memo indicating a refusal for curb cut/street frontage.

On December 2, 2014, ZBA held a public hearing on Owners' request for a special exception. Appellant, who resides at 1015 Spring Street, together with a number of other neighbors who also opposed the grant of the requested special exception, appeared at the public hearing and argued that Owners' proposed development would cause increased congestion of traffic and impairment of an adequate supply of light and air to the adjacent properties. A representative from the City Planning Commission testified that her agency had no objection to the granting of the special exception for the proposed above ground parking garage and Philadelphia City Councilman Mark Squilla advised ZBA that he supported granting the requested relief. At the hearing, Owners presented a revised site plan that showed a reduced curb cut to the original twelve feet as approved by the Department of Streets in response to the correction memo.

At the conclusion of the hearing, ZBA voted to grant the requested special exception, with a proviso regarding the curb cut size. In its Findings of Fact and Conclusions of Law, ZBA determined that the applicants had met their burden of establishing entitlement for the proposed above ground garage. ZBA concluded that given the similarities between the proposed garage and the Property's longstanding, existing use as a parking lot, as well as the low number of vehicles to be accommodated, the proposed garage will not increase congestion in the public streets or transportation systems beyond what would normally be expected of a parking garage, and further that whatever the impact of portions of the proposed building's upper stories, the garage itself will not impact light and air to adjacent properties. (2015 ZBA Findings of Fact and Conclusions of Law, C.L. ¶¶ 10, 12.)

3

Appellant filed a notice of appeal of ZBA's decision to grant the special exception, arguing that Owners failed to meet their initial burden of showing that the proposed use would not have any detrimental impact on the neighborhood over and above that which is permitted as of right and also arguing, for the first time, that the special exception was barred under the pending ordinance doctrine by a change in zoning classification of Property to CMX-3.[3] The Trial Court held oral argument on August 14, 2015 and by Order and Opinion dated October 21, 2015, the Trial Court Judge remanded the case to ZBA to clarify the facts pertaining to the date of submission of Owners' application and the applicability of the pending ordinance doctrine.[4]

On December 9, 2015, ZBA held a second public hearing, where the L&I Plans Examiner (L&I Examiner) who had reviewed the application appeared and testified. (ZBA Hearing Transcript (H.T.), December 9, 2015, Reproduced Record (R.R.) at 67a-91a.) The L&I Examiner testified as to annotations he made on the face of Owners' application, memorializing the manner in which his review was performed. (*Id*., R.R. at 68a.) He explained that he had noted, by its bill number, the City Council bill that affected the Property's zoning classification, had noted the date the bill changing the zoning designation from CMX-4 to CMX-3 came out of committee, June 3, 2014, and had noted on the application that the bill was therefore "not applicable" to Owners' application, which he also noted had

---

[3] Appellant contends that the proposed building has an occupied area of 88.4 percent, a permissible area under a CMX-4 designation, but not permissible under CMX-3, which has a maximum occupied area of 75 percent. (Appellant's Brief at 42.)

[4] In granting the special exception, ZBA made findings of fact that included a statement that Owners had applied for a permit in "approximately July, 2014." (ZBA Findings of Fact and Conclusions of Law, F.F. ¶ 1.) Owners requested that counsel for ZBA file a Praecipe of Correction with respect to the date of its initial permit application date, and ZBA filed revised findings of fact, changing the date that the application was filed to May 23, 2014.

4

been scheduled for review per L&I's computer system on May 27, 2014, prior to the date the bill was reported out of committee. (*Id*., R.R. at 88a.) He further testified that he would consider the application's process date to be the date the application was submitted, May 23, 2014; that none of the documents or revisions considered and discussed with Owners after the initial application was received would have made the application incomplete; that the application was deemed complete; and that changes made subsequent to the initial application were insubstantial, involving clarifying dimensions or providing information that was not already clear on the application plans. (*Id*., R.R. at 73a, 75a-76a.) At the conclusion of the hearing, ZBA voted that the operative date for the filing of the application was May 23, 2014 and that on that date the CMX-4 zoning application applied; Owners' application was not therefore subject to the pending ordinance doctrine. (*Id*., R.R. at 94a-95a.) In its Findings of Fact and Conclusions of Law issued in support of its decision, ZBA further found that the objectors had waived the right to raise an issue regarding the pending ordinance doctrine because they did not raise it at the initial ZBA hearing, and "even if they had not, the credible and substantial evidence in the record clearly shows that it was not applicable in this matter." (2016 ZBA Findings of Fact and Conclusions of Law (C.L.), C.L. ¶ 15.)

Appellant appealed ZBA's decision and a different judge of the Trial Court issued the September 29, 2016 Order at issue here, denying the appeal, affirming ZBA's finding that the pending ordinance doctrine is inapplicable and affirming ZBA's grant of a special exception.[5] (September 29, 2016 Trial Court

---

[5] The Trial Court Judge in this order, however, reversed ZBA's finding that the pending doctrine ordinance was waived, but found nevertheless that the doctrine does not apply in this case. (Trial Court Order at ¶ 1.)

Order.)  The Trial Court found that since the challenged special exception is for an open-air parking structure only, the proposed six-story building is not at issue when considering the effects of a special exception on light, air, traffic and congestion.  (*Id*., ¶ 6.)  Noting that the applicable zoning classification requires four parking spaces, and that Owners' plans call for eight parking spaces, with half of the vehicles stored underground on mechanical lifts, the Trial Court found that Owners had presented sufficient evidence that their proposed garage structure would not affect the adequate supply of light and air beyond that which would normally be expected from proper use.  (*Id*., ¶ 8.)  The Trial Court further found that Owners had met their burden of production and persuasion that the special exception for the garage would not cause congestion in the public streets beyond what normally might be expected from the proposed use, reasoning that surface level parking currently exists at the Property for at least six parking spaces, and the addition of two more vehicles does not justify a disturbance of ZBA's findings.  (*Id*., ¶ 9.)

On appeal to this Court, Appellant argues first that there is no substantial evidence that Owners filed a complete application before June 3, 2014, the date on which the ordinance changing the zoning of Property was reported favorably out of City Council, and that the pending ordinance doctrine therefore applies.  We disagree.  Under the "pending ordinance doctrine" a proposed zoning ordinance that has sufficiently advanced in the legislative process to be a "pending ordinance" applies to building permit applications filed before the ordinance was fully enacted.  *Piper Group, Inc. v. Bedminster Township Board of Supervisors*, 30 A.3d 1083, 1085 n.2 (Pa. 2011).  In the City of Philadelphia Zoning Code, a "pending ordinance" is defined as any bill not yet enacted into law that would amend either the Philadelphia Zoning Code or Zoning Maps, **if a Committee of**

6

**City Council has voted to report the bill** and the bill remains under active consideration. Title 14 of the Code, Section 14-304 (3)(h)(1). The bill relevant in this matter amends the zoning maps, thereby changing the zoning designation of Property from CMX-4 to CMX-3, and was reported favorably by the City Council's Committee on Rules on June 3, 2014. (Certified Record.)

On remand, the Trial Court found that the evidence in front of ZBA was sufficient and deemed credible to show that the application was filed before June 3, 2014. (Trial Court Order, ¶ 2.) As noted by the Trial Court, ZBA as fact finder is the sole judge of credibility and weight afforded to the evidence presented and as such, the Trial Court cannot disturb ZBA's finding of credibility. *Manyunk Neighborhood Council v. Philadelphia Zoning Board of Adjustment*, 815 A.2d 652, 658 (Pa. Cmwlth. 2002). Appellant argues that given the absence from the certified record of an unmodified version of the site plan (containing elevation & site/building data) and the diagrammatic section, it necessarily follows that such plans were not submitted at the time the application was filed, and the application was therefore incomplete prior to June 3, 2014, the date on which the new zoning classification became effective.[6]

---

[6] Owners filed a Supplemental Reproduced Record that includes, *inter alia*, unrevised plans bearing the date of May 23, 2014, which Owners contend were filed as part of their application to L&I but were inexplicably not included in the record. We note that the hearing transcript from the initial hearing before ZBA includes an itemization by counsel for Owners of the contents of his exhibit packet, including his statements that "A-4 is the original site elevation and floor plans" and "A-5 is a revised site plan, which I will address." (December 2, 2014 ZBA Hearing Transcript, R.R. at 4a.) Before this Court, Appellant filed a "Motion to Strike Appellee's Brief and Supplemental Reproduced Record, to Reschedule Oral Argument, and to Defer the Date for Filing a Reply Brief," arguing that the plans were not part of the certified record from ZBA to the Trial Court, that no one testified at the ZBA hearing that these plans had been submitted with the application, and that their inclusion and references to them in Owners' brief render both brief and supplemental reproduced record improper. This Court denied the motion by order dated April 21, 2017.

A representative from the project architectural firm that prepared the plans testified as to the reason for post-June 3, 2014 revision dates that appear on the revised site plan and diagrammatic section included in the certified record; she stated that, at the request of the L&I Examiner, revisions were made to adjust the height of the rooftop mechanicals, to revise the number of parking spaces and add bicycle racks, and to change the size of the street frontage length of the curb cut. (ZBA H.T., R.R. at 57a-59a.)  The L&I Examiner described the documents he presented at the ZBA hearing:

> These are the documents the [L&I] scans in through its recording requirements and what is called web extender. It records, basically, all the submission documents, any relevant correspondence, and the *approved set of plans*, or any accordance from the ZBA, basically, from start to finish what we would require to justify how we approve the application…And then following that are the *two ZBA stamped plans*, as referenced in those provisions and approved by me dated December 12, 2014.

(*Id*., R.R. at 67a-72a) (emphasis supplied.)  The L&I Examiner was questioned as to why there was no unrevised plan or diagram in the L&I file, and he responded that any other plans would not have been entered as part of that record because only plans bearing the ZBA stamp are considered part of the application, and all other plans considered in the course of the review are "considered null and void by the ZBA." (*Id*., R.R. at 77a.)  To the question "[did] any of the documents and revisions that you considered and discussed with the applicant after the initial application was received…make the application incomplete?" the L&I Examiner responded, "no," adding that it was not unusual that L&I would accept an application and, as it did during its review of this project and pursuant to the

8

Philadelphia Zoning Code, would request additional information. (*Id.*, R.R. at 73a.)

We find, based upon the testimony of the L&I Examiner, as found credible by ZBA, that there was substantial evidence to support the ZBA's conclusion that the application was complete before June 3, 2014 and that the pending ordinance doctrine did not therefore apply in this matter. As stated by the L&I Examiner, Owners' application dated May 23, 2014 was deemed to be a complete application. The Courts have made clear that there is a presumption that municipal officers perform their duties properly and take the steps necessary to give validity to their official acts. *Mamallis v. Borough of Millbourne*, 164 A.2d 209, 211 (Pa. 1960); *Appeal of Gilbert*, 383 A.2d 556, 560 (Pa. Cmwlth. 1978). This presumption of official propriety is conclusive if not rebutted by affirmative evidence of irregularity. *Mamallis*, 164 A.2d at 211.

We further dismiss Appellant's argument that even assuming a complete application was submitted to L&I prior to June 3, 2014, subsequent changes to the plans submitted after that date should result in a new application filing date. At the ZBA remand hearing, counsel for other opposing neighbors who did not participate in the appeal *sub judice* argued that although the application itself was not amended, the amended plans constituted a significant, material difference in the proposed project, which required an examination under the new zoning classification. However, the representative from the architectural firm that prepared the plans credibly explained that revisions made, adding bike racks and a parking space, adjusting of the height of the mechanicals and penthouse and decreasing the width of the driveway from twenty feet to twelve feet, were done at the request and direction of the L&I Examiner. The L&I Examiner confirmed that

9

such changes were not unusual and when questioned about the effect of revisions made subsequent to the date an application is made, stated:

> If they add stuff in response to a review, again, it is subjective, whether or not something is a complete application. In this case, [the application] was deemed complete. The changes…there weren't substantial changes. Many of the changes, if I'm not mistaken, and we can refer to the letter I sent, were based on either clarifying dimensions or providing information that wasn't already clear on the application plans.

(ZBA H.T., R.R. at 75a-76a.)

Accordingly, as Owners' completed application was filed prior to the date on which the zoning change was reported out of a City Council committee, and the revisions subsequently made to the plans were for clarification purposes only, the Trial Court was correct in its determination that the pending ordinance did not apply.

We discern no merit in Appellant's alternative argument that, under case law, the relevant date to determine whether a zoning ordinance is pending should be the date on which an amendment is first introduced in City Council - in this case April 10, 2014 - rather than the June 3, 2014 date on which a committee of City Council voted to report the bill. Appellant relies on our Supreme Court's decision in *Boron Oil Co. v. Kimple*, 284 A.2d 744 (Pa. 1971), a case in which the Court determined that the denial by a borough zoning commission in Beaver County was proper where the proposed zoning ordinance was "pending" at the date of the appellant's application. In *Boron*, the Supreme Court cautioned that if the pending ordinance doctrine were limited only to the period of time during which a proposed ordinance is formally before a borough council for final action, property owners could gain an unqualified right to a soon-to-be prohibited land use simply

10

by applying for a permit between the time the proposal was announced and the time the proposal is before the council for consideration. *Boron*, 284 A.2d at 747. In *Boron*, the record showed that for approximately two years prior to the appellant's application for building permit, the borough had expended substantial effort and had seriously considered an extensive revision of its existing zoning ordinance, and the new ordinance had been prepared pursuant to a comprehensive master plan. *Boron*, 284 A.2d at 746-747.

Here, however, the City Council of the City of Philadelphia, a City of the First Class with Home Rule status, enacted its new Zoning Code effective August 22, 2012, and included therein the specific requirement that a zoning amendment becomes a "pending ordinance" not at the date an amendment has first been introduced in City Council, but at the date "a Committee of Council has voted to report the bill and the bill remains under active consideration". (Philadelphia Zoning Code 14-304(3)(e)(.2).(.h).(.1)(.a).) Indeed, our Court has explained, referring to a section of the Pennsylvania Municipality Planning Code[7] (Code) concerning zoning, that the silence of a statute on the effect of pending ordinances was the cause of the development of the "so-called pending ordinance rules," and "[t]hese case-made rules could not and do not prevail over a Code provision so clearly and directly regulating applications." *Monumental Properties, Inc. v. Board of Commissioners*, 311 A.2d 725, 727-728 (Pa. Cmwlth. 1973).

Finally, we find no error in the Trial Court's determination that ZBA was correct in granting a special exception to permit the construction of a surface parking garage. Code Section 14-303(7)(e)(.2) provides that an applicant "shall have the initial duty of presenting objective evidence, and the burden of proof, that

---

[7] Act of July 21, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

11

the grant of a special exception will not cause [seven] specific detrimental impacts to the neighborhood beyond that which normally might be expected from the proposed use."[8]  If the applicant meets the burden described, any objectors then "shall have the duty of presenting objective evidence, and the burden of proof that the proposed use is substantially likely to cause a detrimental impact on the health, safety and welfare of the neighborhood…[or] the proposed use fails to conform with the purpose, spirit, and intent of this Zoning Code."  Code Section 14-303(7)(e)(.3).  In order to deny a special exception, ZBA must be persuaded that the adverse impact of the particular instance of the use requested in the case before it would be greater than would normally be expected from such a use.  *Visionquest National, Ltd. v. Board of Supervisors*, 540 A.2d 995, 996 (Pa. Cmwlth. 1988).  We find substantial record evidence to support the Trial Court's determination that there are no detrimental impacts to the neighborhood beyond that which might normally be expected by the proposed use.  Accordingly, we affirm the Trial Court.

_____
**JAMES GARDNER COLINS, Senior Judge**

---

[8] The specific impacts listed in Section 14-303(7)(e)(.2) are:
    (.a)  Congestion in the public streets or transportation systems;
    (.b)  Overcrowding the land;
    (.c)  Impairing an adequate supply of light and air to adjacent property;
    (.d)  Burdening water, sewer, school, park, or other public facilities;
    (.e)  Impairing or permanently injuring the use of adjacent conforming properties;
    (.f)  Endangering the public health or safety by fire or other means; or
    (.g)  Inconsistency with the Comprehensive Plan of the City.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lynn Dowds,                          :
                Appellant            :
                                 :
           v.                      : No. 1826 C.D. 2016
                                 :
                                 :
Zoning Board of Adjustment           :

## O R D E R

AND NOW this 27th day of June , 2017, the September 29, 2016 order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is AFFIRMED.

 

_____
**JAMES GARDNER COLINS, Senior Judge**