Angel Martinez and Railroad : 
Recovery, Inc., : 
                          Appellants : 
                    : 
             v. : 
                  : 
Zoning Board of Adjustment of the :   No. 1116 C.D. 2017
City of Philadelphia :   Submitted: April 13, 2018


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                      FILED: July 25, 2018

       Angel Martinez (Martinez) and Railroad Recovery, Inc.[1] (collectively, Applicants) appeal from the Philadelphia County Common Pleas Court's (trial court) July 7, 2017 order denying Applicants' appeal and affirming the Philadelphia Zoning Board of Adjustment's (ZBA) decision denying Applicants' request for a special exception and/or variances. Applicants present three issues for this Court's review: whether the trial court erred by affirming the ZBA's denial of a (1) special exception and (2) use variance; and, (3) whether the trial court erred by not ordering the ZBA to grant Applicants a use variance for an expansion of a permitted non-conforming use. After review, we affirm.

       On December 8, 2014, Applicants applied to the City of Philadelphia (City) Department of Licenses and Inspections (L&I) for a zoning/use permit for a proposed junk and salvage yard at 532 West Annsbury Street, Philadelphia

---

[1] Railroad Recovery, Inc. owns the property at issue, 532 West Annsbury Street, Philadelphia, and Martinez leases it therefrom.

(Property), located in a I-2 Medium Industrial Zoning District (I-2 Zoning District). Applicants stated in their application that the proposed use was for "office space, [and a] salvage[], scrap, crush[ing] car[s'] auto wrecking lot." Reproduced Record (R.R.) at 39a. L&I issued a Notice of Refusal determining that Applicants' proposal for retail sale of used parts was prohibited in the I-2 Zoning District and that the proposed salvage yard required a special exception. On February 2, 2015, Applicants submitted a special exception application and appealed from L&I's decision to the ZBA.

The ZBA held a hearing on May 20, 2015, at which Applicants presented only Martinez' testimony and otherwise chose to rely on counsel's presentation.[2] Nueva Esperanza Housing and Economic Development, a Residential Community Organization (RCO), opposed the application. In addition, licensed engineer Josh Castille (Castille) testified on behalf of neighbors who also opposed the application. *See* R.R. at 60a-66a. At the conclusion of the hearing, the ZBA denied Applicants' request for a use variance and a special exception. Applicants appealed from the ZBA's decision to the trial court which remanded the matter to the ZBA to determine whether special exception approval would be granted if the outdoor industrial processes involving the use of equipment for cutting, shredding, compressing or packing were more than 300 feet from the residential multi-family (RM-1) and/or residential single-family attached (RSA-5) zoning district parcels, as set forth on the relevant zoning map.

On October 12, 2016, the ZBA held the remand hearing. Applicants presented revised plans and requested a special exception and a use variance for a recycling plant for storage and removal of recyclables and for the purchase and storage of cars and scrap metal. The revised plans excluded any cutting, shredding,

---

[2] For the most part, Martinez answered basic questions about the Property and the junkyard's operations.

compressing or packing activities. The ZBA incorporated all exhibits and testimony from the first hearing as part of the remand hearing record. Applicants supplemented the record with zoning records reflecting that St. Henry's Church (St. Henry's) currently had a permit to operate a day care, a Catholic Service Office, and an Evangelization Center with a chapel. Applicants argued that although St. Henry's is in a residential district and their closest residential neighbor, it is not used as a residence, and therefore the Philadelphia City Code (Zoning Code) setback requirement should not apply.[3] Martinez did not appear at the remand hearing, instead relying solely on the presentation of counsel.

Nearby neighbors Brian Mast (Mast), Deb Ortez Vasquez (Vasquez), and Shaylo Lopez (Lopez) testified in opposition to the application. Mast's counsel, Peter Hillman, also asserted that Applicants were in violation of a consent order Applicants had made with the City that required them to clean the Property and cease operations until ZBA approval was obtained. *See* R.R. at 95a-96a. Vasquez, who works at Esperanza Health Center located adjacent to the Property, explained that there is only a partial wall that would separate this proposed use from her workplace. *See* R.R. at 96a-97a. Lopez reported that she lives behind the Property, that the Property has an odor of oil and that she has observed trash, such as oil cans and "a big load of stuff" on the Property. R.R. at 97a. In addition, City Planning Commission Representative Ron Bednar (Bednar) testified in opposition to the requested special exception and use variance, noting that Applicants had not sufficiently addressed neighborhood impacts and health issues caused by the proposed use. *See* R.R. at 98a. Bednar further related that the Zoning Code required spacing to be measured from lot-to-lot. *See id*.

---

[3] The zoning records showed that St. Henry's was zoned residential until at least 1998.

At the conclusion of the remand hearing, the ZBA denied Applicants' application in its entirety. The ZBA determined, in relevant part, that the Property does not meet applicable distancing requirements and would need a use variance as opposed to a special exception. The ZBA also determined that Applicants failed to meet their burden for a use variance because they did not (1) meet the requisite unnecessary hardship, (2) identify a unique physical characteristic or circumstance of the Property that would prevent its use for a permitted purpose, (3) prove that the requested variance is the least necessary to afford relief, or (4) establish that the proposed use will not have a detrimental impact upon the public health, safety or welfare of the community.

In addition to denying the use variance, the ZBA determined that Applicants failed to meet the less stringent special exception requirements because the proposed use would cause congestion in the public streets, impair the use of adjacent conforming properties and endanger the public health. The ZBA further ruled that Applicants did not meet their initial burden of proving that the proposed use would not have the specific detrimental impacts provided in Section 14-303(7)(e)(.2) of the Zoning Code.[4] Applicants appealed to the trial court. On July 7,

---

[4] Section 14-303(7)(e)(.2) of the Zoning Code provides:
**Specific Detrimental Impacts on the Neighborhood**.
The applicant shall have the initial duty of presenting objective evidence, and the burden of proof, that the grant of a special exception will not cause the following specific detrimental impacts to the neighborhood beyond that which normally might be expected from the proposed use:
(.a) Congestion in the public streets or transportation systems;
(.b) Overcrowding the land;
(.c) Impairing an adequate supply of light and air to adjacent property;
(.d) Burdening water, sewer, school, park, or other public facilities;
(.e) Impairing or permanently injuring the use of adjacent conforming properties;
(.f) Endangering the public health or safety by fire or other means; or
(.g) Inconsistency with the Comprehensive Plan of the City.

2017, the trial court, without taking evidence, affirmed the ZBA's decision. Applicants appealed to this Court.[5]

Applicants first argue that the trial court erred by affirming the ZBA's denial of a special exception because the ZBA's decision was not supported by substantial evidence. Specifically, Applicants contend they presented evidence that the proposed use satisfied the Zoning Code's objective requirements, entitling them to the presumption that the proposed use was consistent with the health, safety, and welfare of the neighborhood; the objectors did not submit evidence of detrimental impacts beyond bald assertions, personal opinions and speculation; and, if objectors met their burden, they did not show that the detrimental impacts were of a nature not normally associated with a junk and salvage yard.

With respect to special exception approval, Section 14-303(7)(e) of the Zoning Code provides, in relevant part:

> **Criteria for Review and Action by the Zoning Board.**
>
> The [ZBA] must approve, or approve with conditions, the application for a special exception if it determines that the criteria in [Sections] 14-303(7)(e)(.1) **and** [] 14-303(7)(e)(.2) [of the Zoning Code] below have been met, unless the [ZBA] finds that the objectors, if any, satisfied the criteria in [Section] 14-303(7)(e)(.3) [of the Zoning Code]. . . .

R.R. at 140a.

[5] Where the trial court has taken no additional evidence, appellate review is limited to determining whether the [ZBA] committed an error of law or a manifest abuse of discretion. *Hertzberg v. Zoning [Bd.] of Adjustment*, . . . 721 A.2d 43, 46 ([Pa.] 1998). An abuse of discretion will be found only where the [ZBA's] findings are not supported by substantial evidence. *Id.* Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Id.*

*Dowds v. Zoning Bd. of Adjustment*, 165 A.3d 75, 76 n.1 (Pa. Cmwlth. 2017). By April 6, 2018 order, the ZBA was precluded from filing a brief.

5

(.1)   **Specific Conditions of Use.**

**The applicant shall have the initial duty of presenting evidence, and the burden of proof, that the proposed use meets the** definition for a use permitted by special exception, that all dimensional standards are satisfied, and that the application complies with all the criteria and meets all the conditions applicable to the proposed use, including **all applicable use-specific standards in** [**Section**] **14-603** [of the Zoning Code] (Use-Specific Standards).

Phila., Pa. Code § 14-303(7)(e) (2016) (text emphasis added).  Section 14-603(9)(b) of the Zoning Code specifies that "[j]unk and salvage yards and buildings may not be located within 150 [feet] of any [r]esidential district."  Phila., Pa. Code § 14-603(9)(b) (2016).  Further, Section 14-603(9)(c) of the Zoning Code requires that

[i]f the junk and salvage yard/building is located in any district other than the [heavy industrial] I-3 or [port industrial] I-P, **a masonry wall, not less than eight** [**feet**] **in height and not more than 12** [**feet**] **in height, shall be constructed and maintained in good condition around all property boundaries** abutting a zoning district other than I-3 or I-P.  All activities and stored materials must be confined to the walled-in area.  There may be no stacking of material above the height of the masonry wall, but moveable equipment used in the conduct of junk or salvage activities may exceed that height.

Phila., Pa. Code § 14-603(9)(c) (2016) (emphasis added).  Finally, Section 14-202(1) of the Zoning Code mandates that

[u]nless otherwise expressly stated, when the provisions of this Zoning Code require that two or more uses be separated by some minimum distance, the separation distance shall be measured from lot line to lot line along the shortest imaginary line between the subject lots.  Where uses are required to be separated by some minimum distance from a zoning district boundary, **the separation distance shall be measured from the lot line** to the zoning district boundary along the shortest imaginary line between the lot and the zoning boundary.

6

Phila., Pa. Code § 14-202(16) (2016) (emphasis added).

Here, the ZBA denied the special exception because Applicants did not meet the applicable use-specific standards in Sections 14-603(9)(b) and (c) of the Zoning Code. With respect to Section 14-603(9)(b) of the Zoning Code, the ZBA concluded:

> 16. It is undisputed that the Property is adjacent to an RM-1 Residential District. [Castille] . . . testified, and presented exhibits showing, that the Property is within 150 feet of residentially zoned properties other than the church property. Applicant[s] did not present any expert witness to challenge [] Castille's findings. Indeed, Applicant[s'] attorney . . . appeared to rely on those findings in proposing a scaled back use that would occupy only that portion of the [P]roperty identified by [] Castille as outside of the 150 foot setback area.
>
> 17. With respect to Applicant[s'] argument that the church property is not a residential use and should not be considered in determining setback requirements, the [ZBA] notes that churches are permitted by right in most residential districts, including RM-1. The zoning records submitted by Applicant[s] do not show the existing use at the church property to have been permitted by variance; but a change in use permitted by variance would not, in any case, change the property's base zoning classification or affect distancing requirements.
>
> 18. The church property is located in a residential district. That residential district is within 150 feet of the Property, measured to its nearest property line. The proposed salvage yard therefore requires a use variance.
>
> 19. The [ZBA] notes that Applicant[s'] argument that setback requirements can be met by confining the use to a limited, interior portion of the lot is flawed on a second, independent ground. The scaled back use proposed on remand would not satisfy the requirement that salvage yards be a minimum of two acres in size. Applicant[s] cannot use a limited portion of the lot for purposes of meeting setback requirements and simultaneously use the [P]roperty in its entirety to meet size requirements.

R.R. at 124a. The ZBA stated that these conclusions are supported by Castille's unrebutted testimony, *see* R.R. at 60a-64a, and the accompanying exhibits. *See* R.R. at 100a-101a. After a thorough review of the record, this Court rules that the ZBA's decision denying the special exception is supported by substantial evidence. Because Applicants cannot meet "**all** applicable use-specific standards in [Section] 14-603" of the Zoning Code, the trial court properly affirmed the ZBA's denial of Applicants' request for a special exception.[6] Philadelphia Code § 14-303(7)(e)(.1) (emphasis added).

Applicants next assert that the trial court erred by affirming the ZBA's denial of a use variance because the ZBA's decision was not supported by substantial evidence. Specifically, Applicants contend that expert testimony was not needed[7] and Martinez' testimony and his counsel's submission of maps and photographs were sufficient to show unnecessary hardship, lack of adverse impact to the public interest and the variance is the minimum variance necessary to afford relief.

> The law is well-settled:
>
> An applicant seeking a variance must prove that unnecessary hardship will result if the variance is denied and that the proposed use is not contrary to the public interest. When an applicant seeks a variance for a property located in the City, the ZBA must also consider the factors set forth in the Zoning Code. Essentially, an applicant seeking a variance pursuant to the Zoning Code must show: (1) the denial of the variance will result in unnecessary hardship unique to the property; (2) the variance will not adversely impact the public interest; and, (3) the variance is the minimum variance necessary to afford relief. **The burden on an applicant seeking a variance is a heavy**

---

[6] Because this Court agrees with the ZBA that Applicants did not satisfy Section 14-603(9)(b) of the Zoning Code's setback requirement, it need not address whether Applicants met any other special exception requirements.

[7] Applicants are correct that expert testimony is not required, however, the ZBA did not base its decision on the lack thereof.

**one, and the reasons for granting the variance must be substantial, serious and compelling.**

*Liberties Lofts LLC v. Zoning Bd. of Adjustment*, 182 A.3d 513, 529-30 (Pa. Cmwlth. 2018) (footnote and citations omitted; emphasis added). Further,

> [t]his Court has previously held that, in the context of use variances, unnecessary hardship is established by evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; **or** (2) the property can be conformed for a permitted use only at a prohibitive expense; **or** (3) the property has no value for any purpose permitted by the zoning ordinance.

*Id.* at 531 (quoting *Marshall v. Phila. Zoning Bd. of Adjustment*, 97 A.3d 323, 329 (Pa. 2014)).

Applicants contend that their evidence of the Property's dimensions, grade and location was sufficient to meet the unnecessary hardship requirement. However, as the ZBA stated:

> 29. Applicant[s] ha[ve] not shown that denial of the requested variances will result in unnecessary hardship, as defined by the relevant [Zoning] Code provisions and applicable case law. . . .
>
> 30. Applicant[s'] attorney argued that the proposed salvage yard is the only viable use of the Property due to its grading and narrowness. He did not, however, present evidence or expert testimony relating to the grading, or even offer a description. He also did not present evidence of attempts to use or market the Property for any other use permitted in the [I]-2 [Zoning District] classification. Applicant[s'] claim of hardship is supported only by [their] attorney's conclusory, unsupported representation that the Property cannot be used for another purpose. This is not sufficient to satisfy [their] burden of establishing hardship.
>
> 31. Applicant[s'] failure to show hardship is sufficient, in itself, to require denial of the requested variances. The [ZBA] notes, however, that Applicant[s] ha[ve] also [] not established that the remaining criteria for grant of a variance are satisfied.

9

32. Applicant[s] ha[ve] not demonstrated that the proposed use is the least necessary to afford relief or that the proposed use will not have a detrimental impact upon the public health, safety, or welfare.

R.R. at 120a.

"In order to establish unnecessary hardship, a party **must demonstrate** that the property cannot be used for a permitted purpose, that the cost of conforming the property for a permitted purpose is prohibitive, or that the property has no value for a permitted purpose." *Bawa Muhaiyaddeen Fellowship v. Phila. Zoning Bd. of Adjustment*, 19 A.3d 36, 40 (Pa. Cmwlth. 2011) (emphasis added). Here, Applicants did not attempt to demonstrate any of those factors. Their mere submission of the dimensions, grade and location of the Property clearly does not satisfy any of the required elements to establish unnecessary hardship. *See id.* Accordingly, the trial court properly affirmed the ZBA's denial of a use variance.

Lastly, Applicants declare that the trial court erred by not ordering the ZBA to grant Applicants a use variance for an expansion of a permitted non-conforming use. Initially,

> [a]lthough the Pennsylvania Supreme Court has indicated that, to be approved, expansion of a non-conforming use must 'meet the *ordinary requirements* for the grant of a variance,' *Jenkintown Towing Serv*[.] *v. Zoning Hearing* [*Bd.*] *of Upper Moreland* [*Twp.*], . . . 446 A.2d 716, 720 ([Pa. Cmwlth.] 1982) (quoting *Walter v. Zoning* [*Bd.*] *of Adjustment (Phila*[.]), . . . 263 A.2d 123, 126 ([Pa.]1970)), *some* of those requirements are more easily satisfied when the existing use is non-conforming.

*Arter v. Phila. Zoning Bd. of Adjustment*, 916 A.2d 1222, 1229-30 (Pa. Cmwlth. 2007) (footnote omitted). Further,

> [t]he natural expansion doctrine provides that 'a nonconforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it may be increased in extent by natural

10

expansion and growth of trade, neither is it essential that its exercise at the time the ordinance was enacted should have utilized **the entire tract upon which the business was being conducted**.' *Nettleton v. Zoning* [*Bd.*] *of Adjustment of the City of Pittsburgh*, . . . 828 A.2d 1033, 1037 n.3 ([Pa.] 2003) (quoting *Humphreys v. Stuart Realty*, . . . 73 A.2d 407, 409 ([Pa.] 1950)).

*Arter*, 916 A.2d at 1230 (emphasis added).

At the outset, Applicants appear to imply that a remand is required because the ZBA failed to address the issue of whether Applicants were entitled to a variance as an expansion of a permitted non-conforming use. The following discussion occurred on the record during the remand hearing:

[ZBA Attorney]: How much area does [the junkyard recycling facility] occupy?

[Applicants' Counsel]: It's not a large area. And most of this is only 15 feet wide and runs back approximately 150 feet beyond the setback.

[ZBA Attorney]: Wouldn't it violate the requirement that any junkyard be at least two acres in size?

[Applicants' Counsel]: **This would be an expansion of 4,500**, so our entire operation would exceed the two acres. I understand what you're saying. But we need the additional space. So it's not as though we're operating a junkyard on a small lot. **It's actually a junkyard** or recycling – we prefer to call it recycling – **on an existing lot, which then would expand into this, which would be a bigger area for what we are doing.**

[ZBA Attorney]: Is it different tha[n] what was originally proposed here?

[Applicants' Counsel]: Yeah. Originally the proposal was to allow the entire lot from Cayuga to Annsbury for cutting, shredding, dismantling, and all those operations. We have withdrawn that. We no longer want to do that.

As a matter of fact, I'm told that some of the crushing – that's old school. They don't do that anymore. That's not

11

how the business operates these days. So the shredding and the crushing is no longer done in the more modern operations.

Chairperson: Okay.

Mr. Toliver: Good afternoon. Walter Toliver, 4261 North Fifth Street, Philadelphia, Pennsylvania 19140. I'm here on behalf of the Esperanza Housing and Economic Development, which is one of the [RCOs] for the community.

At the initial hearing, we submitted a letter in opposition to this application. We continue to object to the proposed use. Even though [Applicants' counsel] is saying that it's an expansion of an existing business, it's actually a separate lot. And he's looking to have a junkyard on this particular [P]roperty. . . .

R.R. at 94a (emphasis added). This colloquy was the entirety of any mention of an expansion. Given the context of the above statements, the ZBA's only mention of the expansion was in Finding of Fact 36, wherein, it stated:

When asked whether the area of the proposed junkyard, as identified by [Martinez] for distancing purposes, would violate the requirement that junkyards be at least two acres in size, [Applicants' counsel] contended the proposed use should be treated as an 'expansion' of an existing junkyard [Martinez] operates on an adjacent property so that 'our entire operation would exceed the two acres.' . . .

R.R. at 114a.

Because Applicants' counsel never requested a variance as an expansion *of a permitted non-conforming use*, much less presented any evidence to support that the Property was in fact an expansion *of a non-conforming use*, the trial court did not err by not ordering the ZBA to grant Applicants a use variance for an expansion of a permitted non-conforming use.

12

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angel Martinez and Railroad      :  
Recovery, Inc.,      :  
             Appellants   :  
     :  
         v.      :  
     :  
Zoning Board of Adjustment of the   :    No. 1116 C.D. 2017  
City of Philadelphia      :  

## O R D E R

AND NOW, this 25th day of July, 2018, the Philadelphia County Common Pleas Court's July 7, 2017 order is affirmed.

_____  
ANNE E. COVEY, Judge